FISHER v. FAIR.

1. A RIGHT OF WAY which has neither of its termini on the premises of the grantee, and is not essentially necessary to the enjoyment of his premises is not appurtenant, but a mere right of way in gross, which is personal to the grantee, and cannot be by him transferred, notwithstanding the grant is to him for value, and to his heirs and assigns forever.

2. IBID.—POWER OF ATTORNEY.—Where the grantee of a right of way in gross, his heirs and assigns, has been invested with the power of granting the use of this right of way to the owner of an adjoining lot of land, it may be that this grantee's conveyance of his own land would carry with it the right to grant such use ; but such power not being coupled with an interest, it cannot be exercised after the donor of the power is dead, or has parted with his interest in the soil.

3. QUESTIONS ON APPEAL.—Matters not considered on Circuit nor brought up by exceptions, are not properly before this court for consideration.

Before WALLACE, J., Richland, March, 1890.

This was an action by W. C. Fisher against Mary D. Fair and J. Q. Marshall, to recover damages for the obstruction of an alley way. The case turns principally upon the construction of the following deed :

This indenture witnesseth that Samuel Fair agrees to allow Thomas Davis to have for himself and his heirs and assigns, forever, a right of way by an alley ten feet wide, over the northern edge of the lot in the town of Columbia, on the northern side of Plain street, and bounded on the east by Sumter street, into which the said alley is to run ; and said Samuel Fair agrees to allow the said Thomas Davis to have, in like manner, a right of way by an alley on the west side of said lot, beginning at the north end of the alley over which the said Thomas Davis already has the right of way, and running northward of the same width with the same, namely ten feet, into an alley hereinbefore designated on the north side of said lot, including the right of way over so much of the southeast corner of the intersection of the said two alleys, as it may be necessary to round off in order to enable a loaded four horse wagon to pass.

And the said Samuel Fair further agrees to allow the said Thomas Davis, and his heirs and assigns, to have the right at his or their discretion of conveying to Charles H. Black, and his heirs and assigns, or to the owners for the time being of the lot

adjoining the lot of Thomas Davis (which lies on the west side of the above described lot of Samuel Fair) on the north, the right of way through the two alleys running into Plain and Sumter streets, to be enjoyed as fully as by the said Thomas Davis, his heirs and assigns.

In consideration whereof the said Thomas Davis, for himself and his heirs and assigns, hereby surrenders to the said Samuel Fair, and his heirs and assigns, so much of the width of the alley on the west of said lot, running into Plain street, and on the east side of said alley, as will contract the width thereof measured from the east side of the main wall of Dr. Wells' present building, and the prolongation of the same to the western wall of the house now commenced to be built by the said Samuel Fair, to eight feet four inches, and consents that the said west wall, running back as far as now planned and commenced, may be then built and stand forever. And the said Thomas Davis agrees to remove the brick privy now standing on the east side of his lot and contiguous to the boundary line of the said Samuel Fair's land, to a distance of at least thirty feet, measured from the nearest part of the said privy to any the nearest part of said building of Samuel Fair, and hereby binds himself, and his heirs and assigns, never to construct or have a privy on his said lot within a shorter distance than thirty feet from said building of Samuel Fair.

In witness whereof, &c. February 29th, 1856.

The diagram on the page opposite shows the premises, the alley way from a to b and from b to c being the alley in dispute.

The Circuit Judge ordered a non-suit and plaintiff appealed. In addition to the grounds considered by this court, appellant's counsel further urged in argument that, "as this action is both legal and equitable, and the court is invested with jurisdiction in both branches, if we have shown a right in equity, under the present practice in this State we are entitled to the benefit of it;" and he claimed the equity declared in Wash. Ease., *63, ¶ 44 ; 6 Allen, 341; 8 Id., 173 ; Gibert v. Peteler, 38 Barb., 488.

Mr. Allen J. Green, for appellant.

Messrs. Lyles & Haynsworth, contra.

June 18, 1891. The opinion of the court was delivered by

E.

SUMTER STREET.

PLAIN STREET.

N.

S.

ALLEY.

Mrs. M. D. Fair.

ALLEY.

Black Lots.

ALLEY.

Davis Property.

Cent. Nat. Bank.

RICHARDSON STREET.

W.

MR. JUSTICE McIVER.   This was an action to recover damages for the obstruction of an alleged right of way over the lands of defendants, and to perpetually enjoin the defendants from obstructing the same.   The diagram annexed to the "Case" shows distinctly the situation of the premises and the course of the way claimed by the plaintiff, and should be incorporated in the report of this case.   It is sufficient to state generally that the alleged way is an alley between adjacent lots in the city of Columbia, plaintiff being the owner of the two lots designated on the diagram as the Black lots, and defendants being the owners— the one for life and the other of the remainder in fee—of the lot designated the Fair lot, which was originally owned by Dr. Samuel Fair; Thomas Davis having been formerly the owner of the other lots adjoining the alley on the west, designated as the Davis property, a part or the whole of which is now owned by the Central Bank.   The evidence tends to show that originally Davis was in some way entitled to a right of way through and along the alley separating the Davis property from the Fair lot, ten feet wide, up to a point where it intersected an alley running east from Richardson street and separating the Davis property from the Black lots.   So that Davis had a right of way, but whether in gross or appurtenant does not appear, all around his property, by an alley beginning on Plain street and running north to the point where it intersected the alley running west into Richardson street.

While things were in this situation, to wit, on the 29th of February, 1856, Dr. Fair and Davis executed a deed of indenture whereby, in consideration of certain covenants therein stated on the part of Davis, Dr. Fair, acknowledging the right of way of Davis through the alley leading from Plain street north to the point where it intersected the alley running from Richardson street above mentioned, conveyed to said Davis a further right of way through an alley running from Sumter street west over the northern edge of the Fair lot, and agreed to extend the right of way already owned by Davis north to the alley leading from Sumter street west; the practical result being to give Davis a right of way from Plain street around the western and northern sides of the Fair lot to Sumter street.   This conveyance of the

right of way was to Thomas Davis, his heirs and assigns forever, and the deed of indenture contains the following clause : "And the said Samuel Fair further agrees to allow the said Thomas Davis, and his heirs and assigns, to have the right, at his or their discretion, of conveying to Charles H. Black, and his heirs and assigns, or to the owners for the time being of the lot adjoining the lot of Thomas Davis (which lies on the west side of the above described lot of Samuel Fair) on the north, the right of way through the two alleys running into Plain and Sumter streets, to be enjoyed as fully as by the said Thomas Davis, his heirs and assigns."

In March, 1872, Thomas Davis conveyed to the Central Bank the property designated as his on the diagram, together with the right of way secured to Davis by the deed of indenture above mentioned.    This conveyance contains the following clause : "The unobstructed use and right of .way of these two alleys last mentioned, to be held and used in common by the heirs, successors, and assigns of the said Dr. Fair and of said Central National Bank, and also by the said Charles H. Black, his heirs and assigns, who may be the owner of the said lot on Richardson street, adjoining the alley on the north of the lot herein conveyed.    This limitation of the use of said alley, which runs around two sides of said Dr. Fair's lot, on the part of the said Charles H. Black, his heirs and assigns, is herein specified upon the supposition that I may have heretofore granted to them this right of way.    But if I have not granted to them this right by deed, the right is not herein confirmed by me, but is especially reserved to the said Central National Bank, which is hereby invested with all the rights I hold in and by reason of an agreement entered into between Dr. Samuel Fair (and myself) February 29, 1856, which said agreement is duly recorded in the office of the register of mesne conveyances for Richland County."    The conveyance also contains a clause forbidding the bank from violating the covenants on the part of Davis contained in the deed of indenture of 29th February, 1856.

On the 23rd of July, 1889, the Central National Bank conveyed to the plaintiff and another the right of way through the two alleys above mentioned, secured to Davis by the deed of

indenture aforesaid; and the plaintiff having become the owner of the Black lots, bases his claim to the right of way upon the several conveyances above stated; there being no evidence that Davis had ever conveyed to Black the said right of way, as he supposed he might have done. It further appears that on the 16th of June, 1863, Dr. Fair executed a paper, which was adjudged by this court, in *Brazel* v. *Fair* (26 S. C., 370), to take the absolute title to the Fair lot out of Dr. Fair and vest it in a trustee for the benefit of the defendants herein.

At the close of plaintiff's testimony, a non-suit was moved for and granted; the Circuit Judge holding that the right of way conveyed to Davis by Dr. Fair was not a right of way appurtenant to any tenement owned by Thomas Davis, "and that the power conferred upon Thomas Davis to grant the right of way to the owner of the lot now owned by the plaintiff was a mere naked power, not coupled with an interest in the land, and that it was not exercised by Thomas Davis in his life-time or by any one in the life-time of the said Dr. Fair," and therefore plaintiff's claim of a right of way could not be sustained. From this judgment plaintiff appeals upon the several grounds set out in the record, which need not be repeated here, as we propose to consider the several points which we understand to be raised thereby.

The first and perhaps the most material question in the case is as to the character of the right of way in question, whether it was a right of way appurtenant to the premises of the original grantee, Davis, or whether it was a right of way in gross. In the case of *Whaley* v. *Stevens* (21 S. C., 221), it was held that a right of way appurtenant is a right which inheres in the land to which it is appurtenant, is necessary to its enjoyment, and passes with the land, while a right of way in gross is a mere personal privilege which dies with the person who may have acquired it; and the same doctrine was reaffirmed in the same case (27 S. C., 549), when it was again before this court, the Chief Justice in delivering the opinion quoting the following language from Washburn on Easements, chap. II., par. 5, p. 257: "Ways are said to be appendant or appurtenant when they are incident to an estate, one terminus being on the land of

the party claiming. They must inhere in the land, concern the premises, and be essentially necessary to their enjoyment."

In view of these authoritative declarations as to what is requisite to constitute a right of way appurtenant, it seems to us very clear that the right of way secured to Davis by the deed of indenture above mentioned cannot be regarded as a right of way appurtenant to any premises owned by Davis. It does not appear that it had either of its termini on such premises, nor that it was essentially necessary to their enjoyment. On the contrary, it was a right of way in gross, a mere privilege personal to him, and incapable of transfer by him. For, as is said in Wash. Ease., chap. I., par. 2, page 2: "A man may have a way in gross over another's land, but it must from its nature be a personal right, not assignable nor inheritable; nor can it be made so by any terms in the grant." Hence, though by the indenture Fair "agrees to allow Thomas Davis to have, for himself *and his heirs and assigns forever*, a right of way," &c., the same not being appurtenant to any premises then owned by Davis, the right secured is a right of way in gross, a mere personal privilege, which is not assignable and dies with the person. It follows therefore that the attempt of Davis to convey this right of way to the bank was futile and transferred no right.

It is urged, however, that even if this be so, yet as the deed of indenture invested Davis with power to convey this right of way "to Charles H. Black and his heirs and assigns, or to the owners for the time being of the lot adjoining the lot of Thomas Davis (which lies on the west side of the above described lot of Samuel Fair) on the north," Davis could, by virtue of this power, convey the right of way to the bank, as he undertook to do, and the bank could convey the same to the plaintiff, by virtue of a similar power contained in its deed from Davis. There are several objections to this view. 1st. Davis is only invested with power to convey to Black, his heirs or assigns, or to the owners of the Black lots, and we are unable to find any evidence that the bank ever was the owner of those lots, and therefore when Davis undertook to invest the bank with the power conferred upon him to convey the right of way to one who was not the owner of the Black lots, he exceeded the terms of

14—34

his power. But we do not rest our decision upon this point, inasmuch as by the indenture the power to convey was vested in Davis *and his heirs and assigns*, and it may be that after the bank became the assignee (so to speak) of Davis, it would have had the power to convey to the plaintiff, who was then the *owner* of the Black lots.

But, in the second place, we agree with the Circuit Judge, that the power conferred upon Davis, not being coupled with an interest, could not survive, and could not be exercised after the donor of the power had parted with his title to the land over which the power was to be exercised. While, therefore, the Circuit Judge may possibly have erred in assigning as the reason for his conclusion that the power of conveying to the plaintiff was not exercised during the life-time either of Davis or Fair, inasmuch as the "Case" fails to contain any evidence as to the death of either of those persons, yet as it does show . that the power was never exercised until after Fair had parted with his title to the land over which the right of way was to be enjoyed, the conclusion reached by the Circuit Judge was undoubtedly correct. Assuming that the owner of land having the right to convey to another a right of way in gross over his land, may invest a third person with power to make such conveyance, yet such a power, when not coupled with an interest, does not survive, nor can it be exercised after the donor of the power parts with his title to the land to be subjected to such easement. In such a case the donee of the power acts as a mere attorney in fact, and must convey in the name of his principal. Hence when the principal is dead, or has parted with his title to the land, neither he nor his attorney in fact can fix any burden or servitude upon the land. That the power in this case was not coupled with an interest is abundantly shown by the definition of that phrase as given by Marshall, C. J., in *Hunt* v. *Rousmanier* (8 Wheat., 205), quoted with approval by Mr. Justice McGowan in *Johnson* v. *Johnson*, 27 S. C., at page 316.

The equitable right which appellant sets up in his argument presents a question which does not appear to have been presented to or considered by the court below, nor is it mentioned in the exceptions, and therefore that matter is not pro-

perly before us. We may add, however, that the case as made by the plaintiff does not seem to us sufficient to warrant the court in extending to him the equitable relief demanded.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.