[Civil No. 4446. Filed June 8, 1942.]

[126 Pac. (2d) 481.]

CIENEGA CATTLE COMPANY, a Corporation, Appellant, v. J. R. ATKINS and CHRISTINE ATKINS, His Wife, Appellees.

Messrs. Byrne & McDaniel, and Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellant.

Messrs. O'Sullivan & Morgan, and Mr. Leo T. Stack, for Appellees.

LOCKWOOD, C. J.—J. R. Atkins and Christine Atkins, his wife, plaintiffs, brought suit to condemn a strip of land belonging to Cienega Cattle Company, a corporation, defendant, as a passageway for plaintiff's cattle. The case was tried to the court without a jury, and judgment rendered in favor of plaintiffs, whereupon this appeal was taken.

The facts may be stated as follows: Plaintiffs had homesteaded section 34, township 20 north, range 5 west, G. & S. R. B. & M., while defendant was the owner of the adjoining south half of the southeast quarter of section 33. A National Forest area of considerable size lay to the south and west of section 34. Alternate sections of this forest area were owned by defendant, and it had fenced its land in section 33 and section 3 of township 19 north, range 5 west, lying immediately south of section 34, in such a manner that the cattle owned by plaintiffs, and located on section 34, could not pass into the National Forest and onto the alternate sections thereof which were owned by the government.

Defendant for many years had had a permit from the national government entitling it to range a certain number of cattle on the government sections above described. Plaintiff Atkins had for many years been a cattleman, and was desirous of establishing a cattle outfit, with headquarters on his homestead. The land in the homestead was entirely inadequate to maintain sufficient cattle to constitute a reasonable independent outfit, it being considered under the conditions obtain-

ing in the district in question that a section of land cannot adequately carry more than fifteen to twenty head of cattle, and that a minimum of approximately two hundred head of cattle is required to properly support a single family. The ownership and possession of the land in the district was such that the only place where plaintiff Atkins could reasonably secure grazing rights sufficient to maintain a minimum herd, as above described, was on the National Forest, and he made application to the proper authorities for a grazing permit thereon, using his homestead as headquarters from which his cattle would be expected to range back and forth upon the forest area. The forest authorities approved of his intention to establish himself as an independent cattle raiser and gave him to understand that they would issue him a permit if, as, and when he could secure an adequate means of access from his homestead to the forest area. The only practical way for him to do this was by securing a right of way through defendant's land, whereby his cattle might pass from the homestead to the forest area. This, of course, was refused. Plaintiffs then brought suit under the provisions of section 1332, Revised Code 1928, to condemn a private way of necessity through the southeast corner of section 33, for the purpose of allowing their cattle to pass back and forth as above set forth. The trial court denied the relief sought, on the ground that it did not then appear that plaintiffs had secured any definite right to graze their cattle upon the National Forest, and that under such circumstances they could not condemn a private right of way. The matter came before us on appeal, and the judgment of the lower court was affirmed. *Atkins* v. *Hooker*, 56 Ariz. 197, 106 Pac. (2d) 485. Thereafter plaintiffs secured from the federal authorities a grazing permit for thirty head of cattle, with a tentative promise that

as their herd expanded the permit would be enlarged, and the present action was brought.

There are several questions for our consideration on the appeal, and we take them up in their logical order. The first is whether a right of condemnation exists under the circumstances stated for the purpose for which it is requested by plaintiffs. It has been very generally held that in the absence of constitutional authority private property may not be taken for private purposes under the power of eminent domain, but it is also almost universally held that this power is an inherent right which pertains to sovereignty as a necessary and inextinguishable attribute, and that the people, acting through their Constitution, *may* provide that private property may be taken for private use upon due notice and hearing, and the payment of adequate compensation. *State* v. *Superior Court,* 77 Wash. 585, 137 Pac. 994. Such a clause in a state Constitution does not violate any of the provisions of the Federal Constitution. *Head* v. *Amoskeag Mfg. Co.,* 113 U. S. 9, 5 Sup. Ct. 441, 28 L. Ed. 889.

Section 17, article 2, of the Constitution of Arizona reads, so far as material, as follows:

"(*Eminent domain.*)—Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches, on or across the lands of others for mining, agricultural, domestic, or sanitary purposes. . . . "

This is a clear recognition that private property may be taken for private ways of necessity. It was obviously copied from the Constitution of the state of Washington. *Bugbee* v. *Superior Court,* 34 Ariz. 38, 267 Pac. 420, and decisions from that state are, therefore, quite persuasive in construing the section. An attempt was made in this state by a mining corporation to condemn a private way of necessity across the property of another corporation for the purpose of

developing certain mining claims, and we held, in *Inspiration C. C. Co.* v. *New Keystone C. Co.*, 16 Ariz. 257, 144 Pac. 277, 279, quoting from Lewis on Eminent Domain, 3d ed., section 315:

" 'The Legislature of a state may not take, or authorize the taking of private property, except for public use, but the state itself, the people in their collective capacity, may take, or authorize the taking of private property for any purposes of public utility, or public welfare. . . . The policy of permitting private property to be taken for a particular purpose may promote the public welfare, though the purpose may not be a public use, as we have defined it. Just what purposes the public welfare will include will depend upon the ideas and needs and practices of the time. . . . Wherever the local conditions are such that these improvements affect, in a material degree, the general prosperity and welfare of the state, there they become matters of such public concern as justifies the exercise of the eminent domain power to make them possible.' "

and we followed the principle laid down therein that it was not necessary that a private right of way sought for should be for use by the general public. But we also said:

" . . . The power to appropriate private property to the use of another, whether public or private, lies dormant in the state until the Legislature authorizes its use, designates agents, prescribes the purposes and extent of use. In other words, before this sovereign power of the state may be exercised, he who claims the right must point out the modes, conditions, and agencies of appropriation as fixed and granted by legislative expression."

and held that the legislature had not defined the purposes and extent of the use of condemnation to include the purpose for which condemnation was sought in that case. The legislature promptly recognized the necessity of action and supplied the missing legislation. Chap. 139, Session Laws of 1919. At the time of the

commencement of this proceeding, the situation was governed by the provisions of section 27–904, Arizona Code 1939, which, so far as material, reads:

*"Private way of necessity may be condemned—Defined.*—An owner or one entitled to the beneficial use of land, . . . which is so situated with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity . . . may condemn and take lands of such other, sufficient . . . for the . . . maintenance of such private way of necessity. The term 'private way of necessity' as used herein shall mean a right-of-way on, over, across, or through the land of another for means of ingress and egress, . . . for . . . agricultural . . . purposes.''

██ It is urged that this statute does not permit the condemnation asked because it is solely for the direct pecuniary benefit of a private party and that such use is not contemplated by the Constitution. We think the contention is not well founded. The case of *Inspiration C. C. Co.* v. *Keystone C. Co., supra,* expressly holds that when it appears that a private right of way, although only for the direct benefit of a private party, is ultimately for the purpose of the development of the resources of the state as a whole, and tends to prevent a private individual from bottling up and rendering ineffective a portion of the resources of the state, it is, in effect, promotive of the public welfare, and thus within the constitutional provision.

██ The factual situation in the present case shows that due to conditions arising many years ago defendant is the owner of approximately one-half the land in a large portion of the National Forest; that its lands are so situated that if it is permitted to prevent others from securing right of way across them for the passage of cattle, it has, in effect although not formally, acquired the sole right of user of a large portion of the public domain, notwithstanding that the public au-

thorities believe it to be in the interest of the public welfare to permit such domain to be used also by other citizens. We think that the proposed right of way under the facts in this case comes clearly within one of the purposes of condemnation allowed by section 27–904, *supra*.

But it is urged, even admitting that this may be true, we have held in the case of *Atkins* v. *Hooker, supra,* that a party desiring to condemn the right of way must have some beneficial interest in the land to which he desires to secure ingress and egress. We held in *Atkins* v. *Hooker, supra,* that unless it appeared that plaintiff had secured some right of use of the National Forest to which he desired access, he could not condemn a right of way. While of course it is true that a grazing permit on the National Forest does not give ownership of the land or of any legal interest therein, it certainly does entitle one to the ''beneficial use'' thereof and it is only a ''use'' which is required by the statute. Since the right secured by the condemnation proceeding is not the fee of the property condemned but merely an easement thereover, when the right to the use of the National Forest ceases, the easement over defendant's land automatically ceases with it. *Boyd* v. *Atchison, etc., R. Co.,* 39 Ariz. 154, 4 Pac. (2d) 670.

It is next contended that defendant already has the exclusive right of grazing on the National Forest in question, and that the permit granted plaintiffs by the forest service was an infringement upon this right. No case has been cited to us to the effect that a permit to graze cattle upon the forest reserve is automatically and necessarily exclusive in its character. On the contrary, we have always believed that the forest service may use its reasonable discretion as to who shall graze cattle upon the reserve, and how many cattle may be so grazed, and that its judgment

in this respect is binding on the courts, in the absence of an abuse of discretion.

The next contention is that there is no evidence that it was "necessary" to establish the right of way for plaintiffs' cattle, and much was said in the oral argument as to the terrible results which might follow if one was permitted to condemn a right of way across private property for the sole purpose of linking together two separate parcels of land which he desired to use for his own private purposes.

Each case, of course, must be decided upon its own facts, and in many of the illustrations given in the oral argument, it is obvious that a trial court would hold it was not necessary for the general development of the resources of the state or to prevent monopolizing such resources by a few favored individuals, that condemnation proceedings should be sustained. The decision on this point is necessarily left, to a great extent, to the judicial discretion of the trial court, and we cannot say, on the facts, that it was abused in the present case.

The next objection is that the action is a suit in equity for a mandatory injunction, and not a proceeding under the condemnation statute. While the effect is to compel defendant to remove so much of its fences as will prevent the use of the right of way condemned, it in no manner prevents it from fencing the land otherwise. The case of *Callison* v. *Ronstadt,* 21 Ariz. 348, 188 Pac. 266, cited by defendant, was based on an entirely different state of facts and the relief sought was different. The trial court assumed in that case that the plaintiff had certain existing easements over the land of the defendant, and ordered a fence, which obstructed the use of the attempted right of way, torn down. We held, in substance, that the easement did not exist, and if it did not, the owner of the land could not be prevented from fencing his land. In the

present case, the judgment grants the easement and it merely follows as an ancillary remedy that defendant is enjoined from obstructing it.

The last objection is in regard to the amount of compensation. The general proposition that defendant is entitled not only to compensation for the value of the land taken, but to the damages to its ranch as a whole caused by such taking is, of course, true as a matter of abstract law. *State* v. *Carrow,* 57 Ariz. 429, 114 Pac. (2d) 891. But the damages claimed must be legal damages. These are stated by defendant as being (a) loss of forage on the land of defendant in its private ownership upon which the cattle of plaintiffs would necessarily wander and graze, and (b) probable damage which defendant would suffer through the admixture of the herds. If it were the law in Arizona that it was the duty of plaintiffs to prevent their cattle from trespassing upon the open lands of defendant included within the National Forest, the latter would, indeed, be entitled to any damage for loss of grazing. But we have very recently held, in the case of *Garcia* v. *Sumrall,* 58 Ariz. 526, 121 Pac. (2d) 640, that such a trespass, unless willful, does not give a right of action. The same would, in principle, apply to any damages caused by an admixture of the herds through plaintiffs' cattle trespassing upon the lands of defendant. We think that under our statute regulating the grazing of cattle upon the open range, the injury suffered by defendant in the two instances referred to is *damnum absque injuria.* Secs. 50–601, 50–602, Arizona Code 1939.

This disposes of all of the objections raised on the appeal.

The judgment of the lower court is affirmed.

McALISTER and ROSS, JJ., concur.