210 P.2d 593

**SOLANA LAND CO. v. MURPHEY et ux.**

**No. 5057.**

Supreme Court of Arizona.

Oct. 17, 1949.

118

120

Richard H. Chambers, of Tucson, attorney for appellant.

Darnell, Robertson & Holesapple, of Tucson, attorneys for appellees.

UDALL, Justice.

Plaintiff, Solana Land Company, a property holding corporation (principally owned by the Martin Schwerin family of Tucson, Arizona), is appealing from a judgment it obtained against John W. Murphey and Helen G. Murphey, his wife, defendants (appellees), condemning an easement for road purposes over certain real property owned by the latter. Plaintiff maintains that the judgment procured is not clear and should be amended to provide that the easement granted be appurtenant to all of plaintiff's land in section 7. The defendants by their cross-appeal contend it was error for the trial court to have granted plaintiff any easement.

This action was brought under the eminent domain statute (Sec. 27-904, A.C. A.1939) allowing condemnation of a "private way of necessity." The plaintiff company owns all of section 7, township 13 south, range 14 east of the G. & S. R. B. & M. in Pima County, Arizona. The defendants own substantially all of sections 6, 8 and 18 of the same township, which sections bound section 7 on the north, east and south. These sections lie in the westerly part of the Catalina Foothills district which forms a part of the northern suburban area of the City of Tucson. None of the land in question is agricultural and as grazing lands the holdings of both plaintiff and defendants are of comparatively small value. However, largely due to the development efforts of the defendants the area now is of great value in the current market as sites for exclusive homes. Practically all of section 17 in this township was subdivided and sold by defendants and many fine homes have been constructed thereon. Section 7 (plaintiff's land) is wholly undeveloped and, with some slight exceptions, this is true of defendants' three adjoining sections—6, 8 and 18.

The purpose of plaintiff's action was to condemn a private way of necessity (310 feet long from east to west and 60 feet in width from north to south) in the extreme southwest corner of defendants' section 8, in order to obtain an appurtenant easement of ingress and egress for plaintiff's section 7 to connect with a county highway known as Camino Miravel which crosses into section 8 at this point.

The principal paved road serving this immediate area is an extension of North Campbell Avenue (a main Tucson thoroughfare) which runs northerly across sections 17, 8 and 5 to the base of the Catalina Mountains. Camino Miravel branches off from Campbell Avenue within the north half of section 17, crossing into section 8 at a point 310 feet east of the section corner common to sections 7, 8, 17 and 18 and continuing thence northerly across section 8, but not touching plaintiff's section 7 at any

point. Both of these roads were originally constructed at considerable expense by defendants. Later, however, but long prior to the filing of this action these roads were legally dedicated and are now properly established county highways with Pima County assuming the burden of maintenance. It was shown that there is one other possible route via Rudasill Road that might be used by plaintiff in getting to and from its land. About one mile west of section 7 is Oracle Road, otherwise known as the Tucson-Florence Highway, which is paved and runs north and south. Dedicated along the east-west center line of section 12 of the adjoining township, from Oracle Road to the west boundary of plaintiff's section 7, is Rudasill Road. It has been improved from Oracle Road to a point within about one-third mile of the west boundary of section 7, where the improvement stops and the road has no existence on the ground beyond that point. The unimproved but dedicated portion crosses several small arroyos, hence it cannot now be traversed in an automobile, though the trial court found after a personal inspection on the ground, that it could readily be made passable at a very nominal expense. It is thus apparent that section 7 was, for all practical purposes, landlocked at the time this action was brought, as there was no way, without trespassing, that one could have ingress and egress to plaintiff's land by automobile. Defendants also urge that North First Avenue might be extended up the range line (west boundary of sections 18 and 7) to furnish plaintiff a means of egress and ingress, however, this proposed route is as yet non-existent and could only be established at considerable expense.

While no findings of fact were requested or made, still it is apparent from the views expressed by the court, as the trial progressed, that it was of the opinion the Rudasill-Oracle Road route presented plaintiff with an adequate means of ingress and egress for ninety-five per cent of its land in section 7. However, persons going this route would be compelled to travel some four miles farther to reach the commercial and social center including the school house of district 16 (of which the area in question is a part) located at or near the intersection of North Campbell Avenue and River Road.

Due to the fact that a deep arroyo running from the northeast to the southeast cuts across the southeast quarter of plaintiff's section 7, the court was further of the opinion that there only existed a legal "necessity" for granting plaintiff an easement across defendants' section 8, to serve that small area (20 or 30 acres) lying in the southeast corner of plaintiff's section. However in the judgment that was finally entered even this relief was not granted.

The proposed judgment submitted by plaintiff decreed: " * * * that the easement on and over the property above described shall be held appurtenant to * * * section 7, * * * as a private way of necessity for road purposes only."

This reference to the dominant estate owned by plaintiff was, upon defendants' motion, completely stricken from the judgment finally entered and the trial court later denied plaintiff's motion to modify said judgment by reinserting the quoted paragraph. These rulings are complained of by plaintiff's assignments of error.

We agree with plaintiff's first proposition of law: "A judgment or decree should be definite and certain in itself, or capable of being made so by proper construction. It should fix clearly the rights and liabilities of the respective parties to the cause, and be such as the parties readily may understand it, and determine the controversy at hand in order to discourage unnecessary future litigation." See 49 C.J. S., Judgments, § 72; Sec. 21-1219, A.C.A. 1939; Peterson v. Overson, 52 Ariz. 203, 79 P.2d 958.

An examination of the final judgment entered convinces us that it cannot possibly be construed as granting to plaintiff an appurtenant easement to section 7 because some of the essential qualities of such an easement are missing. See Day v. Buckeye Water Conservation & Drainage Dist., 28 Ariz. 466, 237 P. 636; 19 C.J., Easements, § 2, p. 864; 28 C.J.S., Easements, § 1. With an appurtenant easement two distinct tenements are involved, the dominant to which the right belongs and the servient upon which the obligation rests. As no dominant tenement in the instant case remains the right actually granted to plaintiff was a mere easement in gross or personal privilege. Ballard on the Law of Real Property, Vol. 2, Sec. 176, p. 193, best distinguishes between ways appurtenant or in gross. We quote: "A right of way appurtenant is a right which inheres in the land to which it is appurtenant, is necessary to its enjoyment, and passes with the land, while a right of way in gross is a mere personal privilege, which dies with the person who may have acquired it. Ways are said to be appendant or appurtenant when they are incident to an estate, one terminus being on the land of the party claiming. They must inhere in the land, concern the premises, and be essentially necessary to their enjoyment." See also Fisher v. Fair, 34 S.C. 203, 13 S.E. 470, 14 L.R.A. 333; 28 C.J.S., Easements, § 4; 17 Am.Jur., Easements, §§ 10, 11 and 12; Thompson on Real Property, Permanent Edition, Vol. 1, §§ 321, 322 and 323; Tiffany on Real Property, Second Edition, Vol. 2, § 350; Restatement of the Law of Property, Servitudes, §§ 453 and 454.

The right to take private property for "private ways of necessity" stems from Art. 2, Sec. 17 of the Constitution of Arizona. This provision was held to be not self executing in the case of Inspiration Consol. Copper Co. v. New Keystone Copper Co., 16 Ariz. 257, 144 P. 277. Thereafter an enabling statute (section 27-904 A.C.A.1939) was adopted by the legislature. The only justification, constitutional-

ly, for this statute is that the public welfare is served. Lewis, Eminent Domain, Third Edition, Vol. 1, § 250. This is emphasized in the decision of Cienega Cattle Co. v. Atkins, 59 Ariz. 287, 126 P.2d 481, 484. It is there said: " * * * when it appears that a private right of way, although only for the direct benefit of a private party, is ultimately for the purpose of the development of the resources of the state as a whole, and tends to prevent a private individual from bottling up and rendering ineffective a portion of the resources of the state, it is, in effect, promotive of the public welfare, and thus within the constitutional provision." The pertinent parts of this enabling statute (Sec. 27-904) reads: *"An owner or one entitled to the beneficial use of land, * * * which is so situated with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity over, across, through, and on said premises, may condemn and take lands of such other,* sufficient in area for the construction and maintenance of such private way of necessity; * * * The term 'private way of necessity' as used herein shall mean a right-of-way on, over, across, or through the land of another for means of ingress and egress, and the construction and maintenance thereon of roads, * * * for * * * domestic * * * purposes." (Emphasis supplied.)

The italicized parts of this statute clearly indicate the legislative intent that only a party owning or having a beneficial use in land that is "land-locked" may bring an action to condemn a private way of necessity across the land of another. It therefore logically follows that where an easement is granted under the statute it must be appurtenant to plaintiff's land as distinguished from a mere personal privilege. Here plaintiff sought an appurtenant easement, the judgment granting a mere personal privilege was but half a loaf. It was entitled to the whole loaf or none dependent upon whether a "necessity" was established.

It is apparent the trial court found a "necessity" exists for a roadway out over section 8 to serve some part of section 7. The question then arises as to whether the court can limit the use of the condemned right of way to only part of such land. The following proposition of law succinctly states plaintiff's position: "Upon a condemnation of a private way of necessity, if necessity under the law is shown for a part of a tract of the one who seeks to condemn, and the defendant is being compensated for his entire loss, the decree should permit use by plaintiff's whole tract, and, therefore, the dominant easement should be made appurtenant to plaintiff's whole tract." Only one reported case has been cited where it was sought to limit the use of the condemned right of way to part

124

of plaintiff's holdings. This is the case of State ex rel. Grays Harbor Logging Co. v. Superior Court of Chehalis County, 82 Wash. 503, 144 P. 722. There the plaintiff sought a right of way for a logging road. Admittedly the plaintiff had access to a water outlet for one of its remote tracts, but did not have it for other tracts. The court refused to exclude the tract with admitted ingress and egress from using the condemned right of way.

While the opinion from the Supreme Court of Washington is not controlling, it is peculiarly persuasive both by reason of its sound reasoning as well as the fact that our constitutional provision on eminent domain was obviously copied from the constitution of that state. Cienega Cattle Co. v. Atkins, supra. A holding in this case contrary to that in the Washington case would breed future litigation as it would be wholly impracticable of enforcement to draw an artificial line somewhere through section 7 and say to future occupants, on either side of the line, "This route and this alone you are at liberty to use." Also if the judgment as entered were permitted to stand it would impose an intolerable burden upon defendants of policing the strip of road in question to confine its usage to that of plaintiff alone. Furthermore it would tend to "bottle up" and render ineffective a portion of the resources of the state. Unlocking these resources was the sound public policy underlying the decision in Cienega Cattle Co. v.

Atkins, supra. With its salubrious climate which attracts thousands of people to the Tucson area it may well be said that suitable roads to prospective home sites in the Catalina Foothills means as much to Pima County as an irrigation canal in the agricultural counties of the state, or as the lumbering industry does to the state of Washington.

Plaintiff having established a right to a "way of necessity" over section 8 it was entitled to have such easement adjudged appurtenant to all of its holdings in section 7. In fact we are of the opinion that as applied to a roadway established under the condemnation statute (Sec. 27-904) it becomes an open public way which may be traveled by any person who desires to use it. Lewis, Eminent Domain, Third Edition, Vol. 1, Sec. 260. Hence the term "private way of necessity" is really a misnomer. Sherman v. Buick, 32 Cal. 241, 91 Am.Dec. 577. Its character is unaffected by the circumstances that it may be but little used and is at present mainly convenient for the use of the plaintiff, nor by the circumstances that the total cost of condemnation as well as the construction and maintenance of the highway strip in question has fallen upon those most immediately concerned instead of the public at large.

By their cross-appeal the defendants urge that the plaintiff failed to establish a "necessity" for condemning this right of way. The trial court in entering judg-

ment for plaintiff necessarily found against defendants on this issue and there is substantial evidence to sustain its conclusion. While it is true that section 7 was unoccupied and unimproved at the time of trial, its present use is not the only test by which to determine the existence of a "necessity." Prospective use may be considered as well as present necessity. The Supreme Court of the United States in the case of Rindge Company v. Los Angeles County, 262 U.S. 700, 43 S.Ct. 689, 693, 67 L.Ed. 1186, at page 1193, has held: "In determining whether the taking of property is necessary for a public use not only the present demands of the public, but those which may be fairly anticipated in the future, may be considered." See also Martin v. Portland Pipe Line Co., 1 Cir., 158 F.2d 848.

On the matter of selection of the route to be condemned the condemnor makes the initial selection and in the absence of bad faith, oppression or abuse of power its selection of route will be upheld by the courts. State ex rel. Polson Logging Co. v. Superior Court for Grays Harbor et al., 11 Wash.2d 545, 562, 119 P.2d 694, 702.

Furthermore, for a landowner to condemn a right-of-way across intervening land to a public road, he need not show that he has no outlet, but only that he has no adequate and convenient one. Brady v. Correll, 20 Tenn.App. 224, 97 S.W.2d 448. In other words the condemnor need not show an absolute necessity for the taking, a reasonable necessity being sufficient. State ex rel. Postal Telegraph-Cable Co. v. Superior Court, 64 Wash. 189, 116 P. 855; Johnson v. Consolidated Gas, Electric Light & Power Co., 187 Md. 454, 50 A.2d 918, 170 A.L.R. 709.

There is no merit to defendants' contention that section 59-601 A.C.A. 1939 (Article 6, County Highways), gives to plaintiff an appropriate and expedient method of obtaining a means of ingress and egress to its property by petitioning the board of supervisors for the establishment of a county highway. It is a well known fact that in subdivision areas county roads follow but rarely precede development and occupancy. Hence such a request to the county authorities at this stage would be fruitless. Furthermore providing for condemnation at the instance of a private party the framers of our constitution as well as the legislature affirmatively rejected such a contention.

It is conceded that the defendants have been fully compensated for the strip condemned. A land appraiser testified it had a value of $750 and that was the figure the court adopted. Defendant John W. Murphey concisely states his position in these words: "I think Mr. Kime set a very fair value on it. I am not interested in the value of this land. I would give it to Mr. Schwerin if it was right and proper. That is the thing. I don't want any money. That doesn't enter into this deal. I just don't want him to use my subdivision as a main

entrance to his when I spent one hundred thousand dollars making it."

The judgment of the lower court is reversed with directions to amend the judgment so as to make the condemned right-of-way appurtenant to section 7.

LA PRADE, C. J., STANFORD and DE CONCINI, JJ., and JOHNSON, Superior Court Judge, concur.

PHELPS, J., being the trial judge, the Honorable J. MERCER JOHNSON, Judge of the Superior Court of Pima County, was called to sit in his stead.