998 P.2d 1084

Richard SIEMSEN and Annette Siemsen, husband and wife; Bill Starmer and Patricia Starmer, husband and wife; and Robert Paloutzian and Darlene Paloutzian, husband and wife, Plaintiffs–Appellants,

v.

Merwyn C. DAVIS, Trustee under the Merwyn C. Davis Trust dtd. 7/27/81; Edward B. Hitchcock and C.L. Lux, Co-Trustees of the Qualified Election Trust under the Will of June E. Hitchcock dated May 28, 1982, Defendants–Appellees.

No. 1CA–CV 98–0651.

Court of Appeals of Arizona,
Division 1, Department B.

April 4, 2000.

Walraven & Roberts, by Paul L. Roberts, Jerry Carver, Prescott, Attorneys for Plaintiffs–Appellants.

Jones & Rosenberg, by Bruce E. Rosenberg, Prescott, and Murphy Lutey Schmitt & Beck, by Michael R. Murphy, Prescott, Attorneys for Defendants–Appellees.

## OPINION

FIDEL, Judge.

¶ 1 Arizona's private condemnation statute, A.R.S. § 12–1202 (1994), permits a landlocked private landowner to condemn a "private way of necessity" across lands of another upon showing a "reasonable necessity." *See Solana Land Co. v. Murphey,* 69 Ariz. 117, 125, 210 P.2d 593, 598 (1949). In the underlying bench trial, the trial court concluded that the Plaintiff landowners had failed to make the requisite showing. In Plaintiffs' appeal from the judgment for Defendants, we address two issues:

(1) whether landowners seeking to condemn a private way of necessity must prove themselves unable to obtain an easement across adjoining State land that would permit them an alternative route in and out of their property;

(2) whether evidence that an alternate route is arduous, lengthy, and inconvenient suffices to establish reasonable necessity to privately condemn a shorter, more passable, and more convenient route.

### HISTORY

¶ 2 Plaintiffs own and reside on 40–acre parcels of land located in Section 7, Township 19 North, Range 3 West, of the Gila and Salt River Base and Meridian, Yavapai County, Arizona. Defendants own and operate ranches in Sections 18 and 19, which lie directly south of Section 7. Directly north of Section 7, Section 6 consists primarily of State-owned land. Extending north from Section 6 to the town of Ash Fork lies a privately owned development of 40–acre parcels known as "Juniperwood Ranch." Section 7 is bounded on the east by Prescott National Forest and on the west by State-owned land.

¶ 3   The parties dispute whether Section 7 is landlocked in fact, but agree that it is legally landlocked—that it has no recorded means of ingress or egress. How it came to be so is unexplained. The record also leaves unexplained why Section 7, although originally part of the large, privately owned ranch that was subdivided into Juniperwood Ranch, was left out of that subdivision's final plat.

¶ 4   The object of Plaintiffs' action is a private two-track dirt road that traverses approximately one and one half miles of Sections 18 and 19. Known as the "Old Telephone Road," it runs southward from the southern edge of Section 7 across Defendants' properties to an improved public road known as "Big Chino Road." Big Chino Road connects in turn with State Highway 89A to the southeast. Although Plaintiffs for a time enjoyed permissive use of the Old Telephone Road, permission was withdrawn and the gated entrance locked after Defendants suffered damage to their ranches from increasing traffic on the road.

¶ 5   In the underlying bench trial, Defendants contested reasonable necessity for Plaintiffs' attempted condemnation, asserting that Plaintiffs have an alternative outlet from their properties over an unimproved, State-owned road that runs north across Section 6, connecting with a private roadway in Juniperwood Ranch that eventually joins Interstate 40 at the town of Ash Fork. Defendants acknowledge that this northerly roadway is "arduous, unkept, lengthy and burdensome." Steep and rocky, crossing washes, impassable by ordinary passenger car, it adds 45 miles and two hours of travel to a trip to Prescott, the closest major town. According to Defendants, however, the road is passable with four-wheel drive and suffices to bar recourse to the private condemnation of a southern outlet across Defendants' land.

¶ 6   Plaintiffs have never been denied access to the northerly route, but neither have they established a legal right to use it. At trial the parties disputed whether an effort to obtain a permanent easement from the State over Section 6 would be fruitful or futile. They also disputed whether, if Plaintiffs could obtain an easement over Section 6, they were legally entitled to use the private

roadway through Juniperwood Ranch. Finally, the parties disputed whether the northerly roadway, even if entirely available to Plaintiffs, constituted a reasonable alternative, given its arduous condition and its length.

¶ 7   After trial, the trial court concluded that Plaintiffs had failed to carry their burden of proving a reasonable necessity to condemn an outlet across Defendants' land. In support of this conclusion, the trial court made the following findings, among others:

9.   Each of the Plaintiffs, prior to purchasing their property, knew there was no recorded access to the property in Section 7. The Plaintiffs admitted this knowledge and, in addition, their title policies, deeds and escrow documents clearly recite that there is no legal access in and out of Plaintiffs' property....

10.   The Plaintiffs do have physical access to their Section 7 property via a road that extends north through Section 6, continuing through Juniperwood Ranch to Ash Fork. This northern roadway initially traverses a portion of land owned by the State of Arizona before continuing into and through the Juniperwood development....

11.   With regard to access across the State-owned land in Section 6, the Court finds that the Plaintiffs have done nothing to avail themselves of the opportunity to acquire an easement or fee title to the roadway which runs to the north of their property....

12.   Conflicting expert testimony was presented to the Court regarding the "legality" of the Plaintiffs' use of the road through Juniperwood to the north. The Court resolves this factual dispute in favor of the Defendants and adopts as fact the testimony of Mr. Chesbro, who is employed by First American Title Company, the trustee for Juniperwood. Mr. Chesbro testified, and the Court so finds, that First American Title would insure access through Juniperwood based on the recorded public easements....

14.   The Court finds that while the condition of the roadway north from Section 7 to Ash Fork is poor and inconvenient for the Plaintiffs, it is, in fact, passable.

¶ 8 We deferentially review the trial court's findings of fact, but draw our own conclusions of law. *See* Ariz. R. Civ. P. 52(a); *Polk v. Koerner*, 111 Ariz. 493, 494–95, 533 P.2d 660, 661–62 (1975).

## THE AVAILABILITY OF AN ALTERNATE ROUTE

■ ¶ 9 Arizona law permits a landowner to engage in private condemnation when land "is so situated with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity." A.R.S. § 12–1202(A).[1] A landowner seeking to condemn a private way of necessity over the lands of another must show a "reasonable necessity" for the taking. *See Solana*, 69 Ariz. at 125, 210 P.2d at 598.

■ ¶ 10 We first consider whether, in order to show reasonable necessity, Plaintiffs were obliged to demonstrate the *unavailability* of the northerly route across Section 6 and the Juniperwood Ranch. Plaintiffs argue that, because the evidence showed their property to be "landlocked," the proper question for the trial court was whether they exercised bad faith in selecting the Old Telephone Road. In support of this proposition, Plaintiffs quote a passage from *Solana:* "On the matter of selection of the route to be condemned the condemnor makes the initial selection and in the absence of bad faith, oppression or abuse of power its selection of route will be upheld by the courts." *Id.* at 125, 210 P.2d at 598.

¶ 11 We accept the quoted proposition as the law, but do not agree that it establishes Plaintiffs' right to ignore the northerly route. The question whether Plaintiffs exercised good or bad faith in choosing a particular route to be condemned could not arise until Plaintiffs established a reasonable necessity to condemn any route at all. *See id.* To assert that they were landlocked and entitled to condemn a southerly outlet begged the question whether they had an adequate outlet by the northerly route. *See Bickel v. Hansen*, 169 Ariz. 371, 375, 819 P.2d 957, 961 (1991) (where an adequate alternative exists,

"the statutory way of necessity does not exist because the purportedly landlocked land is not, in fact, hemmed in"). Because it was Plaintiffs' burden to establish the absence of an adequate alternative, the trial court properly considered whether Plaintiffs had established either the unavailability or the inadequacy of the northerly route.

¶ 12 Most of the northerly route consists of a private roadway through the Juniperwood subdivision. Although Plaintiffs' deeds lack any reservation of easement through Juniperwood, the Defendants contend that Plaintiffs are nevertheless entitled to the beneficial use of an easement that was reserved within most of the deeds conveying parcels in that subdivision. At trial, the parties made this disputed contention the subject of conflicting expert testimony, and the trial court resolved the issue in favor of Defendants, finding that a title company would insure the Plaintiffs' "access through Juniperwood based on the recorded public easements."

■ ¶ 13 Although we owe deference to a trial court's resolution of conflicting expert testimony on a dispute framed as one of fact, we question the resort to expert testimony on an issue of legal entitlement that should more properly have been framed as one of law. *See Hafner v. Beck*, 185 Ariz. 389, 393, 916 P.2d 1105, 1109 (1995) ("Although standards for experts' qualifications and admissibility of their opinions have been stretched considerably, we have not yet reached the point when experts can dictate the law."). Yet whether we treat the issue as one of fact and defer to the trial court or treat the issue as one of law and come to independent judgment, either course favors Defendants. This is so because, treating the issue as one of law, we find that Plaintiffs failed to prove that they were not entitled to a common law *implied* way of necessity across the Juniperwood subdivision. *See Bickel*, 169 Ariz. at 374, 819 P.2d at 960.

■ ¶ 14 "Under the common law, where land is sold that has no outlet, the

---

1. The statute implements article 2, § 17 of the Arizona Constitution, which includes "private ways of necessity" among several listed exceptions to the general proposition that "[p]rivate property shall not be taken for private use."

vendor by implication of the law grants ingress and egress over the parcel to which he retains ownership, enabling the purchaser to have access to his property." *Id.* The factual predicates for a common law way of necessity are original unity of title and subsequent separation. *See id.* The record demonstrates both original unity of title and subsequent severance between Section 7 and the remainder of Juniperwood Ranch. Thus, the record suggests that Plaintiffs may establish their entitlement by common law implication to the beneficial use of the easement through Juniperwood.

¶ 15 An easement through Juniperwood would make no difference, of course, unless Plaintiffs can reach the Juniperwood road by taking the State-owned road that crosses Section 6. And though Plaintiffs undisputedly lack any current legal access to that road, the parties do dispute the likely outcome should Plaintiffs seek such access from the State. Plaintiffs argue that it would be futile to seek a permanent easement from the State, citing evidence that others who made inquiries were offered nothing more lasting than a ten-year renewable easement over the road. The area manager for the State Land Department, however, testifying by deposition, did not foreclose the possibility of a permanent easement for landlocked owners such as Plaintiffs:

> Q: [D]id you tell these people that there was a methodology whereby they could apply for a fee title to that road so that they would always be assured that they'd have a right to travel across section six?
> A: Yeah. I pointed out to them that they don't have a right-of-way now, and they are technically in trespass using the road, and they should apply for that right-of-way if they wish to continue using it.
> * * *
> Q: Realizing that you can't bind the State Land Department, I just want to talk about your general experience in your nine years. When people seek to acquire what has been a long-time existing road and acquire it from the state for road purposes, are they usually successful?

> A: Yes. The policy of the land department is to grant access.
> Q: And is that policy enhanced when people are legally landlocked?
> A: Yes. It's also enhanced when the road already existed, as in this case.

¶ 16 The trial court found that Plaintiffs had "done nothing to avail themselves of the opportunity to acquire an easement or fee title to the roadway." This finding and the quoted testimony support the trial court's conclusion that Plaintiffs failed to prove the unavailability of the northerly outlet from their land.

## THE ADEQUACY OF THE ALTERNATE ROUTE

■ ¶ 17 That the northerly route may be available to Plaintiffs does not end our inquiry, however, for its availability would make no difference if its length and condition make it an inadequate alternative to the southerly route that Plaintiffs seek to condemn. The parties do not dispute the rough condition of the northerly road. Defendants themselves call it "arduous, unkept, lengthy and burdensome." Yet the trial court found it passable and concluded that it sufficed to preclude Plaintiffs from showing a reasonable necessity to condemn a roadway over Defendants' land. We consider whether this conclusion is consistent with the facts.

■ ¶ 18 A battle such as this involves a clash of values. The Arizona Constitution [2] provides for condemnation of a private way of necessity as a means to prevent "bottling up and rendering ineffective a portion of the resources of the state." *Cienega Cattle Co. v. Atkins,* 59 Ariz. 287, 294, 126 P.2d 481, 484 (1942). Yet Defendants' right to preserve and protect their private property is also constitutional "and should not be lightly regarded or swept away." *See Bickel,* 169 Ariz. at 374, 819 P.2d at 960; *see also Gulotta v. Triano,* 125 Ariz. 144, 146, 608 P.2d 81, 83 (1980).

¶ 19 The conflict is poignantly illustrated in this case. To deny Plaintiffs a southerly outlet would require them to use four-wheel drive vehicles to reach and leave their prop-

---

**2.** *See supra* note 1.

erty by the north and increase their travel time to Prescott, the nearest major town, by approximately two hours of rough road. But to grant Plaintiffs a southerly outlet would have what the trial court found to be "a detrimental and damaging effect on the ranching operations of the Defendants."

¶ 20 To appreciate the trial court's finding of detriment to Defendants, one must understand that what is called a "private way of necessity" is not private at all. *See Solana,* 69 Ariz. at 124, 210 P.2d at 598 ("the term 'private way of necessity' is really a misnomer"). When a way of necessity is condemned, its use is not limited to the condemnor; instead the condemned roadway "becomes an open public way which may be traveled by any person who desires to use it." *Id.*

¶ 21 The trial court specifically described the damage that Defendants had already suffered as a consequence of their previous accession to public passage over their road:

> This damage includes the expansion of the road from a two-track path to what is now in many locations two rutted lanes. The Court observed that grass on the Defendants' cattle ranches is worn away by extensive public travel, resulting in swales forming, which become mud bogs in wet weather. This causes traffic to go around the mud, thus causing further significant expansion of the roadway. The Court also observed gunfire to road signs, litter and damage to fences.... None of this damage can be directly attributed to the Plaintiffs. Nonetheless, the Court finds that as the area surrounding the Plaintiffs' property (including the Juniperwood development) continues to grow, as all of Yavapai County is growing, the use of any roadway condemned across the Defendants' ranch property will increase, with a consequential increase in the burden to the Defendants' property.

In a contest to determine whether the Defendants must suffer such damage to their ranch so that Plaintiffs can enjoy a quicker and more convenient outlet from their property, Plaintiffs hold no obvious trump card.

¶ 22 Plaintiffs seek to make the matter of convenience decisive, citing our supreme court's comment in *Solana* that, "for a landowner to condemn a right-of-way across intervening land to a public road, he need not show that he has no outlet, but only that he has no adequate and convenient one." *Solana,* 69 Ariz. at 125, 210 P.2d at 598. But Defendants respond that mere convenience is not determinative, citing this court's observation in *Bickel* and *Gulotta* that a resisting landowner's right to private enjoyment of his property should not be "swept away merely to serve [the condemnor's] convenience and advantage." *Bickel,* 169 Ariz. at 374, 819 P.2d at 960; *Gulotta,* 125 Ariz. at 146, 608 P.2d at 83. We believe that Defendants are correct.

¶ 23 We acknowledge that the quoted passages, taken in isolation, might suggest an unresolved conflict in the Arizona case law over the significance of convenience to the determination of reasonable necessity. The appearance of conflict is deceiving, however, arising only if one attaches more weight to the word "convenience" than it was meant to bear. In *Bickel* the party resisting condemnation prevailed because the party seeking condemnation had an alternative outlet that was found to be adequate under the circumstances, even though the alternative "was twice as long, was meandering, and would cost more." *Bickel,* 169 Ariz. at 374, 819 P.2d at 960. *Bickel* thus demonstrates, as Defendants contend, that convenience is not decisive; it takes more than mere convenience to justify condemning a private pathway over another's land. Yet *Solana* stands for the complementary proposition that the mere existence of an alternative outlet will not defeat a private condemnation; the alternative must be reasonable, and an alternative may be so inconvenient as to establish the unreasonableness of an alternative route. *See Solana,* 69 Ariz. at 125, 210 P.2d at 598.[3]

---

**3.** Both *Solana* and *Bickel* cite as illustrative the case of *Brady v. Correll,* 20 Tenn.App. 224, 97 S.W.2d 448 (1936), in which ferry boat access, though available for the purpose of transporting machinery and farm products to a landowner's property, was deemed inadequate to prevent the private condemnation of a road. *See Solana,* 69

¶ 24 Our conclusion that inconvenience is not decisive is supported by Washington case law.[4] In *State ex rel. Carlson v. Superior Court,* 107 Wash. 228, 181 P. 689 (1919), the Washington Supreme Court stated:

> There is a difference between necessity and mere convenience. A man having a present right of way may find a more convenient way over the land of another, but he may not take it under a claim that it is necessary to the proper use and enjoyment of his land or to save expense, unless there is no other passable way or the expense would be prohibitive.

*Id.* at 691; *see also Dreger v. Sullivan,* 46 Wash.2d 36, 278 P.2d 647, 648–49 (1955) (no right to condemn where route sought was merely shorter and more convenient); *Roberts v. Smith,* 41 Wash.App. 861, 707 P.2d 143, 146 (1985) (the condemnor must show the alternative route to be "unreasonable or prohibitively expensive"); *compare State ex rel. Schleif v. Superior Ct.,* 119 Wash. 372, 205 P. 1046 (1922) (reasonable necessity shown where alternate route would require construction of bridge at an expense not "within reasonable bounds").

■ ¶ 25 Convenience, in short, though one consideration, does not provide a bright line test. Nor can any bright line test readily be found to resolve the question of reasonable necessity in a lawsuit seeking private condemnation. Such lawsuits, as we have indicated, engage strong competing interests and values. To resolve them calls for delicate judgment and a close consideration of all applicable facts.

■ ¶ 26 One fact that other courts have considered relevant is the landlocked owner's awareness of the difficulty of access at the time of purchase. *See Carlson,* 181 P. at 692; *see also Gulotta,* 125 Ariz. at 146, 608 P.2d at 83 (denying private way of necessity where the necessity, if any, was created by landowner's voluntary act in conveying property while reserving only minimal access to

street). This factor would not defeat the condemnation of a private way of necessity where property had no alternative means of access, for in such a case, a condemnation would be necessary to prevent "bottling up and rendering ineffective a portion of the resources of the state." *Cienega Cattle Co.,* 59 Ariz. at 294, 126 P.2d at 484. But in a contest such as this that turns on the adequacy of a less convenient alternative, we deem it relevant to consider, as the trial court did, that Plaintiffs purchased their property knowing the nature of their access.

¶ 27 For the foregoing reasons, and with considerable deference to the judgment of the trial court, which considered the relevant circumstances and travelled both the southerly route over Defendants' ranchland and Plaintiffs' alternative outlet to the north, we find no error in the trial court's conclusion that Plaintiffs failed to prove the northerly alternate route an inadequate outlet for their land.

### CONCLUSION

¶ 28 Plaintiffs in this private condemnation action had the burden of proving reasonable necessity. This burden included proving either the unavailability or inadequacy of an alternate access route. Because Plaintiffs failed to carry their burden on either ground, we affirm the trial court judgment for Defendants.

CONCURRING: CECIL B. PATTERSON, Jr., Presiding Judge, and JAMES B. SULT, Judge.

---

Ariz. at 125, 210 P.2d at 598; *Bickel,* 169 Ariz. at 374, 819 P.2d at 960.

4. Because article II, § 17 of the Arizona Constitution, which provides for the condemnation of private ways of necessity, was derived from a similar provision in the Washington Constitution,

the Arizona courts have looked from time to time to Washington case law as persuasive, though not controlling. *See Solana,* 69 Ariz. at 124, 210 P.2d at 597; *Bickel,* 169 Ariz. at 374, 819 P.2d at 960; *Gulotta,* 125 Ariz. at 146, 608 P.2d at 83.