HELEN S. WALLERSTEIN and Another, Plaintiffs, *v.* WESTCHESTER JOINT WATER WORKS No. 1 and Another, Defendants.

Supreme Court, Special Term, Westchester County, December 10, 1937.

*Benjamin I. Taylor* and *Ralph E. Becker*, for the plaintiffs.

*Munn Brewer*, for the defendant Westchester Joint Water Works No. 1.

SYME, J. The plaintiffs are property owners and residents of that section of the town of Harrison known as "Purchase," concededly a fine residential community containing numerous estates. The defendant Westchester Joint Water Works No. 1 is a corpora-

tion formed pursuant to chapter 654 of the Laws of 1927, as amended, by the towns of Harrison and Mamaroneck and the village of Mamaroneck for the purpose of obtaining and supplying water both for fire protection and domestic consumption.

Briefly summarized, the statute, as amended (McKinney's Unconsol. Laws, §§ 2971–2994), empowers two or more towns, villages or water districts to form a co-operative corporate entity, governed by a board of trustees consisting of the executive officers of such towns, villages or water districts, which may obtain and distribute water to the municipalities and their inhabitants. The respective municipalities pay their proportionate share of the operating costs and expenses based upon metered consumption within each municipality.

It is not disputed that the present water facilities of the district are inadequate and that an auxiliary water supply system is necessary. To meet this need a plan was proposed by the board of trustees and subsequently adopted by the governing bodies of the three municipalities involved. This provided for tapping Rye lake by means of a pump station and piping water from this added source of water supply into underground reservoirs to be constructed; in addition the plan called for the erection of a steel water tower, ninety feet in height and about forty-two feet in diameter, in the immediate vicinity of plaintiffs' property, which lies within the " Residence A-2 " district on the zoning map of the town of Harrison. This residence district, which also includes the property upon which the tower has been partly erected, is the most highly restricted area in the town of Harrison, under the zoning ordinance thereof.

Construction of the tower proceeded to a point where the steel structure had almost been completed when a temporary restraining order was granted on September 16, 1937. The plaintiffs contend that the erection of the water tower violates the zoning ordinance in several respects, and now seek a permanent injunction restraining the Westchester Joint Water Works and its codefendant, the contractor engaged in the construction of the tower, from proceeding with its construction.

During the trial counsel for the plaintiffs conceded that, unless the erection of this water tower was in violation of the zoning law, the plaintiffs were not entitled to the injunctive relief here sought.

Clearly the operation of a water tower is not one of the enumerated uses available in this district under the zoning ordinance.

If the restrictions contained in the ordinance are deemed valid and effectual as against the waterworks a quasi-municipal corporation engaged in supplying water for fire protection and domestic

consumption, the plaintiffs must be afforded the relief which they seek.

In the consideration of the effect to be given the zoning ordinance restrictions it becomes necessary to pass upon the question of whether the collection and distribution of water by a co-operative, corporate entity composed of several municipal corporations may be denominated the exercise of a governmental function or the discharge of a corporate or private service. If the defendant is acting in a private or proprietary capacity it is subject to the provisions of the ordinance. (*Canavan* v. *City of Mechanicville*, 229 N. Y. 473, 476; *O'Brien* v. *Town of Greenburgh*, 239 App. Div. 555, 557.)

In this connection it was said in *Canavan* v. *City of Mechanicville* (*supra*): "While the business of maintaining a municipal water system and supplying water to private consumers at fixed compensation is public in its nature and impressed with a public interest, it is not an exercise of governmental or police power. A municipal corporation, in aggregating and supplying water for the extinguishment of fires, discharges a governmental function, In operating a water works system, distributing water for a price to its inhabitants, it acts in its private or proprietary capacity, in which it is governed by the same rules that apply to a private corporation so acting."

In *Springfield Fire & Marine Ins. Co.* v. *Village of Keeseville* (148 N. Y. 46) it was held that a municipality which operated a waterworks both for fire protection and domestic consumption was acting in a governmental capacity, and, hence, was not liable for negligence in the maintenance of its mains and pipes, as a result of which the dwelling insured by plaintiff was destroyed. At page 57, speaking through GRAY, J., the court said: "There is nothing connected with the work, which is not of a governmental and public nature. It is in no sense a private business, and the authority to construct the works was given to it by the Legislature, not at its own particular instance or application, but because it was one of the political subdivisions of the State and, as such, was entitled to exercise it. How could it justly be said that the maintenance of the water works system, any more than of a fire department, was a matter of private corporate interest? Is it not for all the inhabitants and for their good and protection?"

Thereafter, in *Oakes Mfg. Co.* v. *City of New York* (206 N. Y. 221), the court took occasion to limit the doctrine of the case from which I have just quoted to the specific facts there present. It went on to hold, in substance, at page 228, that, in maintaining a municipal water system to supply water to private consumers at a fixed compensation, the city of New York was acting, not in a

governmental capacity, but in a private business, thereby rendering itself liable for breach of contract or negligence. However, the court found other reasons which compelled a dismissal of the complaint in an action based in tort.

In *Brush* v. *Commissioner of Internal Revenue* (300 U. S. 352; 57 S. Ct. 495; 81 L. Ed. 691; 108 A. L. R. 1428) the United States Supreme Court held that the acquisition and distribution of a supply of water by the city of New York constituted the exercise of a governmental function. While this case concerned the status of the salary of an employee of such a water system with relation to income tax liability, the decision was made to turn squarely upon the question here under discussion. The court (300 U. S. 352, 371; 57 S. Ct. 495, at p. 500; 81 L. Ed. 691; 108 A. L. R. 1428), speaking through Mr. Justice SUTHERLAND, said: " Certainly, the maintenance of public schools, a fire department, a system of sewers, parks and buildings, to say nothing of other public facilities and uses, calls for the exercise of governmental functions. And so far as these are concerned, the water supply is a necessary auxiliary, and, therefore, partakes of their nature."

While, as we have seen, the question is not free from judicial doubts, I prefer the reasoning which supports the conclusion that the defendant Westchester Joint Water Works is engaged in the discharge of an essential governmental function.

The defendant also contends that the zoning ordinance is invalid as against said defendant because it fails to make any provision for the construction and maintenance of a water supply system. The argument is based upon the statutory requirement that the zoning regulations serve the purpose of promoting the health, safety, morals and general welfare of the community, and that they shall also facilitate the adequate provision, among other things, of water. (Town Law, §§ 261, 263.)

The zoning ordinance of the town of Harrison specifies no district in which a water tower may be erected or reservoirs may be placed. It cannot be said that a zoning plan which would effectively prohibit the construction of any water supply system and its adjuncts meets the requirements of the statute. While such an ordinance may be deemed valid as to those matters which it properly regulates pursuant to the statute, it cannot be permitted to prevent citizens of a community from obtaining an adequate supply of water.

It should also be pointed out that it is not ordinarily the proper function of the judiciary to review the determination of the governing bodies of a group of municipalities with respect to the type of public improvement to be made, or the place where it shall be

located. There is evidence in the record to support the action taken by the board of trustees and each of the municipalities affected. No claim of bad faith has been made and no evidence of any illegal waste of public funds has been adduced.

As the court said in *Oakes Mfg. Co.* v. *City of New York* (206 N. Y. 221, at p. 229): "In discharging such a function as that of furnishing water to citizens the municipal authorities are necessarily invested with a wide discretion which is not subject to judicial review. (*Mills* v. *City of Brooklyn*, 32 N. Y. 489.) Under any ordinary public circumstances which do not involve bad faith or a waste of public funds they must decide whether one source or another shall be sought."

Pursuant to stipulations made by all parties in open court, I have personally visited and observed the location and construction of the tower in so far as this has progressed.

Upon the trial drawings were introduced in evidence indicating the appearance of the tower upon completion, and the court is satisfied that the completed structure will not constitute any such disfigurement of the terrain as plaintiffs attempt to depicture.

There is no question but that a public necessity exists. Large sums have already been expended and contracted for in the construction of this system, most, if not all, of which will be a total loss in the event that this injunction be granted.

The tower, when completed with its decorative covering, will not constitute as much of a blemish on the landscape as the familiar windmill so frequently observed on the country estates of the wealthy residents throughout Westchester county, some of which are located in the general vicinity of this tower.

The engineers have selected the present system as the most feasible as well as economical, both as to construction and maintenance, and the court is of the opinion that the damage, if any, that will be suffered by the plaintiffs will be so infinitesimal as to be entirely negligible.

As a result the court has concluded that plaintiffs' complaint should be dismissed, with costs, and that the temporary injunction, heretofore granted, be vacated.

Settle findings and proposed judgment on two days' notice.

All papers have been filed in the county clerk's office.