[Civil No. 3889. Filed January 10, 1938.]

[75 Pac. (2d) 30.]

THE CITY OF PHOENIX, a Municipal Corporation, Appellant, v. WILL JOHNSON and HORTENSE JOHNSON, His Wife, Appellees.

116

118

Mr. I. A. Jennings, City Attorney and Mr. Hess Seaman, his Assistant, for Appellant.

Mr. James E. Nelson and Mr. L. C. McNabb, for Appellees.

LOCKWOOD, J.—This is an appeal by the City of Phoenix, a municipal corporation, hereinafter called

defendant, from a judgment in favor of Will Johnson and Hortense Johnson, his wife, hereinafter called plaintiffs. The record presents the following situation:

Plaintiffs brought suit alleging, in substance, that they were the owners of and residents upon certain premises to the southwest of the City of Phoenix, and that defendant had built and installed a certain sewer system for said city which conveyed all of the sewage of the city to a sewage disposal plant within some 2,000 feet of plaintiffs' property; that beginning with the first day of January, 1934,

" . . . said sewage disposal plant is so carelessly and negligently operated by the defendant herein and is so inefficient and out of repair that it cannot at all times handle the sewage entering therein from the sewage mains aforesaid, and frequently breaks down and becomes totally useless and out of repair, at which times it is necessary to by-pass all sewage arriving at the sewage disposal plant into the Salt River immediately South of said disposal plant and within 150 yards thereof and not to exceed three-eighths of a mile away from plaintiffs' property, home and residence aforesaid; that since the first day of January, 1934, said sewage disposal plant has as time progressed, continuously becomes more inefficient and the by-passing of sewage as aforesaid more frequent by reason of all of which noisome and obnoxious odors, gases and foul and nauseating smells arise from said disposal plant from the sludge thereon stored and from the sewage by-passed into the Salt River, which said noisome, obnoxious gases, odors, gases and foul and nauseating smells are carried and conveyed by prevailing air currents coming from a Southwesterly direction over across and upon plaintiffs' said property, home and residence, all of which is nauseating to the plaintiffs, renders them physically sick, disturbs their repose at night, and makes a continued residence on the said property impossible and has utterly destroyed the value of the plaintiffs' property by reason of which their property loss is the total destruction of the value

of said property herein of the value of $6,500.00, and they are damaged in the comfortable and free enjoyment of life and other property in the sum of $3,-500.00;"

Defendant filed a plea in bar which in substance alleged that plaintiffs had in the year 1932 assigned any cause of action which they had or might thereafter have as a result of the operation of defendant's sewer system to C. C. Howell and Mary E. Howell; that the latter had brought suit against the City of Phoenix, setting up, in substance, all the matters which plaintiffs herein allege in the present action; and that all of the issues of the Howell action had been found in favor of defendant, and judgment rendered thereon, which judgment had never been appealed from and was still in force and effect. The defendant also answered, admitting the building and operation of the sewer system, but denying all the other allegations of the complaint. Plaintiffs demurred to the plea in bar, which demurrer was by the court sustained, and the case went to trial before a jury on the complaint and the general denial. Defendant endeavored at a number of times during the progress of the case to raise the question of *res adjudicata* by the Howell suit and assignment above referred to, but any evidence in regard to that was consistently ruled out by the trial court. The jury returned a general verdict in favor of plaintiffs, in the sum of $1,000, whereupon this appeal was taken.

There are nine assignments of error, raising a number of questions which we shall consider in the manner which seems advisable. The first question is whether the court properly sustained the demurrer to the plea in bar. Such plea sets up the following assignment made by plaintiffs July 6, 1932, to C. C. and Mary E. Howell:

"That we, Will Johnson and Hortense Johnson, his wife, for value received, do hereby sell, assign, transfer

and set over unto C. C. Howell and Mary E. Howell, husband and wife, any and all sums of money now due and owing to us, any and all claims, demands and causes of action which we now have or may have against the City of Phoenix, in the State of Arizona, arising out of the construction, installation, maintenance and operation of the sewage disposal plant of said City located on South Twenty-third Avenue near the Salt River.''

Thereafter, the Howells brought suit against defendant, setting up the ownership by the Johnsons of the same premises involved in the present action, the maintenance and operation of the sewage plant, and:

`` . . . That said sewage disposal plant has been so negligently, carelessly and inefficiently constructed, maintained and operated, that said plant and every part, unit and stage in the operation thereof, and the fertilizer factory constructed in connection therewith, and the drainage therefrom, have at all times since the beginning of the operation thereof, emitted, given off and discharged into the pure air, vile, stinking, nauseating and noisome gases, vapors and odors, which said *gases, vapors and odors,* extend over and upon the premises and home of the said Will Johnson and Hortense Johnson, his wife, and penetrate their said home in such volume and to such extent as to destroy the enjoyment, material comfort and repose of the said Will Johnson and Hortense Johnson, his wife, to their joint damage in the sum and amount of five thousand dollars ($5,000.00).

''That the construction, maintenance and operation of said plant at the location and in the manner aforesaid, has rendered the home of the said Will Johnson and Hortense Johnson, his wife, uninhabitable and unmarketable and has entirely destroyed the rental value of the remaining improvements on said premises, and has impaired the value of said premises to the extent and in the amount of four thousand dollars ($4,000.00), to the damage and loss of said Will Johnson and Hortense Johnson, his wife, in said amount.''

That case was tried to a jury which returned a general verdict in favor of defendant, and judgment was rendered thereon.

 If the assignment above set forth included the present cause of action, the judgment rendered in the Howell case was, of course, *res adjudicata* as to the issues involved in the present action, and the demurrer to the plea in bar should have been overruled. It is obvious that both actions were based upon the alleged maintenance of a nuisance by the defendant, City of Phoenix. The term "nuisance" signifies in law such a use of property or such a course of conduct, irrespective of actual trespass against others, or of malicious or actual criminal intent, which transgresses the just restrictions upon use or conduct which the proximity of other persons or property in civilized communities imposes upon what would otherwise be rightful freedom. It is a class of wrongs which arises from an unreasonable, unwarranted, or unlawful use by a person of his own property, working an obstruction or injury to the right of another, or to the public, and producing such material annoyance, inconvenience, and discomfort that the law will presume a resulting damage. 46 C. J. 645, and cases cited. Nuisances are usually spoken of as public, private, and mixed. A nuisance is common or public when it affects the rights which are enjoyed by its citizens as a part of the public, while a private nuisance is one which affects a single individual or a definite number of persons in the enjoyment of some private right which is not common to the public. Mixed nuisances are those which are public and at the same time cause special damage to private individuals. The distinction does not arise from any necessary difference in the nature or the character of the thing which creates a nuisance, but is based on the difference between the rights affected thereby. If a nuisance affects the general public and

at the same time inflicts some special injury upon a private individual that is not inflicted upon the general public, such individual may have relief, notwithstanding the nuisance itself is public. It thus appears that a private individual may have a right of action on account of either a public or a private nuisance. In the first case he must show some special damages which he has suffered in addition to those common to the general public. In the other, he may recover for the damages which he has received, regardless of whether the general public has suffered by reason of the nuisance or not. A public nuisance is defined by section 4693, Revised Code 1928, as follows:

*"Public nuisance; maintaining; penalty.* Anything which is injurious to health, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property by an entire community or neighborhood, or by any considerable number of persons, . . . is a public nuisance."

It thus appears that in order to constitute a public nuisance it must affect a considerable number of persons or an entire community or neighborhood. The complaint in the present case does not allege either directly or indirectly that defendant's sewer system is injurious to anyone except the plaintiffs. We think the complaint, therefore, sets up an action for a private, rather than a public, nuisance.

Whether a party injured has only one or several rights of action for the maintenance of a nuisance, whether public or private, depends upon whether the nuisance is a permanent, or what is called a continuing one. If the nuisance be permanent in its nature, there is but one cause of action, and when that has been determined, the rights of the party claiming to be injured by the nuisance are settled once and for all. If however, the nuisance is of a con-

tinuing nature, successive actions may be maintained for the damages occurring from time to time. *Baltimore & Potomac R. Co.* v. *Fifth Baptist Church,* 137 U. S. 568, 11 Sup. Ct. 185, 34 L. Ed. 784; *Donahue* v. *Stockton G. & E. Co.,* 6 Cal. App. 276, 92 Pac. 196. The difference between these two classes of nuisance is well discussed in the case of *Olpp* v. *Hocking Valley R. Co.,* 22 Ohio N. P., N. S., 433 (46 C. J. 650), as follows:

"If it is within the power of the person by the exercise of skill and labor to abate the nuisance, he must do so. If he fails in his duty, but allows the same to continue, he is responsible for maintaining a continuing nuisance. . . . If one responsible for maintaining a nuisance is unable by the exercise of skill and labor to abate it, then it is to be regarded as permanent, because it will continue indefinitely without change. . . . Permanent nuisance expresses the idea that a nuisance may continue in the same state, unless the person obligated to abate it performs his duty and changes its form so as to destroy its character as a nuisance. . . . If the injury be temporary, as distinguished from permanent; that is, if it is one which can be abated, but the defendant has failed continuously to abate it, it is temporary or continuing. . . . This is the sole basis of the common law distinction between the two kinds of nuisances, that is the ability of man to abate the nuisance; and the rule is based upon the theory that it lies within the power of human skill and labor to remove the cause of continuance of the nuisance, and the ability of the person responsible to thereby abate the same by putting the structure in such condition, or by adopting such precautions, or by devising such methods or processes in the conduct of the business or manufactory that the cause of the nuisance may be thereby removed and abated. . . . The word permanent has reference not alone, and perhaps not so much to the character of the structure causing the injury as it does upon future use and conditions, and the power and ability of man to change its character."

It appears, then, if a nuisance is of such a nature that although the thing itself may continue, yet its injury to another may be abated by human agency, and the owner or perpetrator of the nuisance fails to abate it, the nuisance is a continuing one, and one action does not exhaust the remedies of the parties injured. If, however, the thing is of such a character that it cannot be maintained without continuing to be, in the legal sense, a nuisance, it is permanent in its nature, and the rights of the injured party are exhausted by one action.

We think it is a matter of which this court may take judicial notice that a sewer system for a city of the character of Phoenix can be maintained in such a manner that it will be neither a private nor a public nuisance. The expense may be great, and the vigilance required in the operation and maintenance may be incessant, but modern science teaches us that human care and ingenuity is sufficient for the situation. We think, therefore, that a sewer system which it is alleged is obnoxious because from time to time its operation has been inefficient, is not a permanent, but rather a continuing, nuisance, and that the rights of a party who has been annoyed by odors proceeding therefrom are not exhausted by one action, but that he may bring as many actions as the improper operation of the system requires.

Applying this rule to the present case, since the Howell action was for a continuing, and not a permanent, nuisance, it was not necessarily *res adjudicata* as to damages which might later be caused plaintiffs through obnoxious odors affecting the use and enjoyment of their premises. Nor do we think the assignment carried with it anything more than the right of action which existed in favor of plaintiffs at that time. The action is one in tort, and while we have been unable to find any cases where the precise

question has arisen and been decided, we think it un-reasonable to hold that the assignment of a chose in action for a tort does, or can, carry with it an assignment of a right of action for another tort which has not been, and may never be, committed, but which it is anticipated may possibly be committed in the future. To illustrate, if my neighbor habitually drives his automobile so carelessly that I have been greatly endangered by such action, and though not yet injured, I feel that at any time I may be, I may not assign any right of action which I may have if he does injure me in the future to a third person. We hold, therefore, that the assignment did not, and could not, carry with it any right of action against defendant which did not exist at the time it was made. Such being the law, the Howell case and assignment, while a bar to any action by plaintiffs for damages arising by the faulty operation of defendant's sewer system before the 6th day of June, 1932, was not *res adjudicata* as to any right of action which plaintiffs might have for other matters which occurred after the date of the assignment, and the court properly sustained the demurrer to the plea in bar, and refused to allow evidence in support thereof.

The next question is whether the court erred in refusing to give certain instructions asked by defendant. One of these instructions reads as follows:

"You are instructed that the mere fact, if from the evidence you believe it is a fact, that odors from the sewage disposal plant were detected at times at plaintiffs' residence, that alone would not constitute a nuisance. The odors must have been sufficient in extent and volume to interfere substantially with the comfortable enjoyment of life or property by the entire community or neighborhood, or by any considerable number of persons in that vicinity, before it would constitute a nuisance, as I have heretofore defined a nuisance to you."

In view of what we have said in regard to the nuisance complained of being a private, rather than a public, one, we think the instruction requested incorrectly stated the law, for it is not necessary that a private nuisance affect the general public.

The other instruction refused is in the following language:

"You are instructed that the mere fact, if it be a fact, that plaintiffs might get occasional odors on their premises from the sewage treatment and disposal plant of defendant, is not alone sufficient to establish a nuisance, but they must have established by a preponderance of the evidence that the odors permeated or passed over their property in such volume and with such frequency and regularity as to have constituted a nuisance as I have heretofore defined a nuisance to you. Otherwise, your verdict must be for the defendant. In other words, the inconvenience or annoyance complained of must not have been merely fanciful or such as would have affected only those of fastidious tastes, but it must have been such as would have affected an ordinarily reasonable person. The court instructs you that the plaintiffs cannot recover damages for mere occasional odors whereby the plaintiffs on their land would experience some slight annoyance and inconvenience. The annoyance and inconvenience must have been material and not merely trivial, and must have been of such character as to interfere with the comfortable enjoyment of life and property by the plaintiffs."

The court had instructed the jury as follows:

"You are instructed that plaintiffs' complaint herein is an action by private individuals for alleged special damages alleged to have been caused them by the maintenance of a public nuisance. Under our statute (section 4693, Rev. Code 1928) a public nuisance is defined as anything which is injurious to health or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property by an entire community or neighborhood or by any considerable number of persons."

Since this was an action for a private, instead of a public, nuisance, the instruction given was erroneous, but as it imposed a greater burden of proof upon the plaintiffs than was required by the law, and since its giving is not assigned as error, defendant is not in a position to complain of it. The instruction requested required the jury to find that the odors complained of constituted a public, as well as a private, nuisance, or to return a verdict for defendant. This is not the law. Plaintiffs had the right to recover damages if a private nuisance existed. And while the remainder of the instruction is proper, the trial court, when requested to give an instruction which is right in part and wrong in part, is not required to reframe it so as to eliminate the improper portion, and it is not error to refuse to give it. *Moreno* v. *Russell,* 47 Ariz. 38, 53 Pac. (2d) 411.

The next question goes to an instruction given by the court of its own motion. It is contended that the first part of the instruction comments on the evidence and assumes the existence of facts alleged in the complaint. We have examined this portion of the instruction and do not find it subject to the objections made by defendant. The latter portion of the instruction, however, contains the following language:

"You are further instructed that even though you may find the defendant's sewage disposal plant to have been properly constructed and efficiently operated, if notwithstanding these factors such plant constitutes a nuisance to the plaintiffs, the manner of construction and operation constitutes no defense to plaintiffs' cause of action. The manner of construction and operation standing alone, constitutes no defense to plaintiffs' cause of action."

It is contended that this, in effect, makes the only test of liability of the defendant, "Did the plant constitute a nuisance to the plaintiffs?" We can see no

error in the instruction. Neither an individual nor a municipal corporation has the right to maintain a nuisance without being responsible in damages therefor. No matter how great may be the necessity of providing a sewer system for the city, it may not rightfully be done in such a manner as to maintain a nuisance. *Attorney General ex rel. Wyoming Tp.* v. *City of Grand Rapids,* 175 Mich. 503, 141 N. W. 890, 50 L. R. A., (N. S.) 473, Ann. Cas. 1915A 968; *Missouri* v. *Illinois,* 180 U. S. 208, 21 Sup. Ct. 331, 45 L. Ed. 497. While it is true that a sewer system is, indeed, a vital necessity for the maintenance of health in any large municipality, even that necessity does not authorize the municipality to injure the person or property of another without responsibility therefor. Had the complaint in this case sought equitable relief, such as the enjoining of the maintenance of the sewer system in question, there are some authorities which hold that even if the sewer does constitute a nuisance, the necessity of the municipality may be so great that injunctive relief by means of abatement will not be granted; but we know of no cases holding that the injured party is not entitled to his action for damages. If it be said that, under these circumstances, the municipality must pay perpetual tribute to adjoining property owners, the answer is that in such case the right of condemnation always applies. We think, therefore, that the instruction is correct. No matter how closely a public sewage plant may follow the plans which theoretically are sufficient to prevent its becoming a nuisance, and no matter how efficiently such plant may be operated in accordance with those plans, if, as a matter of fact, notwithstanding this, it does create a nuisance, the fact of the proper construction and efficient operation does not constitute a defense to an action for damages. The city must at its peril devise and carry out some

plan of sewer construction and operation which will prevent the plant becoming a nuisance, or must pay damages if the nuisance exists.

 The seventh question is in regard to the measure of damages. These damages were based upon two grounds: (a) A diminution in value of the property itself; and (b) the comfortable enjoyment by the plaintiffs of the use of the property. The instruction reads as follows:

"You are further instructed, gentlemen, that the plaintiffs in this cause sue for damages to their property and for damages, by reason of discomfort alleged by them to have been suffered by reason of the operation of defendant's Sewer Disposal Plant in their immediate vicinity, such discomfort being caused by said plant giving off certain noisome, obnoxious gases, odors and foul and nauseating smells as alleged in plaintiffs' complaint.

" (If you find these facts) The measure of damages in this case is two-fold. First, for damages to their property by loss of value and you will determine their damages, if any you find, in that regard, by deducting from the fair market value of said premises on the 1st day of January, 1934, and the reasonable market value of their premises at this time, and the difference between the present market value and the former market value is the amount of damages to property by the plaintiffs suffered, and in no event can that exceed the amount prayed for in plaintiffs' complaint, to-wit, $6.500.00.

"The second element of damages are (is) personal and have (has) to do with the health and comfort of the plaintiffs by reason of the existence of the condition alleged in the complaint, and if you believe from the evidence that such a condition existed and has continued to exist since the 1st day of January, 1934, you will assess the plaintiffs' damages. In so assessing plaintiffs' damages, I charge you that there is no measure or yardstick by which you may arrive at any definite sum of damages, but the jury may assess such sum as it may consider sufficient to compensate these plaintiffs for such condition of discomfort and ill-

health as may be shown by the evidence. In no event, however, can this sum exceed $3,500.00, that being the amount asked for in plaintiffs' complaint.''

There are two objections made thereto. The first is that there was no evidence in the record to justify the instruction as to damages to the real property, and that plaintiff had admitted that he testified in the trial of the Howell suit, in October, 1933, that it then had no value, and further admitted that nothing had arisen since October, 1933, and January, 1934, to increase the value of the property. J. D. Kinnison, who was a real estate expert, testified that on the 1st of January, 1934, the property was worth approximately $3,500, and that at the time of the trial it was worth, under the most favorable circumstances, $1,500. This, we think, is sufficient evidence to sustain an instruction in regard to damages to the real property. The objection that the plaintiff himself had admitted that at the time of the Howell trial he had testified that the premises in October, 1933, had no value, and in the trial of the present action admitted that nothing had arisen since October, 1933, and January, 1934, to increase the value of the property, might seem a serious and, indeed, vital one, but when this fact is viewed in its true perspective, we think it still left the question of the damages to the real estate one for the jury. It appears that in the Howell trial, in October, 1933, plaintiff testified that the property was originally worth $6,500, and that its value had been totally destroyed then by the obnoxious odors which pervaded it. It is the universal rule of law that a party to an action is not concluded by an admission made by him in the course of another action, either in the pleadings or the evidence, and that the admission may be explained or contradicted unless it amounts to an estoppel. *Hunter* v. *Hunter,* 111 Cal. 261, 43 Pac. 756, 52 Am. St. Rep. 180, 31 L. R. A. 411; 22 C. J. 423, and cases cited. The

jurors in the present action may well have concluded that plaintiff's zeal in the previous trial had led him to exaggerate the damage which had been done to his premises up to October, 1933. They, like all intelligent men, doubtless were aware that in a case of that nature plaintiff may honestly have believed at the time that his property was totally ruined, and have later discovered that it yet had some actual value. We certainly feel that it would be an unjust rule to hold that a statement of the nature made by plaintiff in the previous action, under all the circumstances of both cases, acts as an estoppel, so as to bar him from maintaining in the present action that his real estate had suffered serious damages by the continuous bad odors since January 1, 1934.

 The other objection is that since there was no evidence of actual ill-health the court should have omitted any mention of such a matter in its instructions, and, further, that the standard set up by the court for the measure of damages was that of "compensation," without providing that such compensation must be "just and reasonable." The instruction should have said nothing in regard to the health of the plaintiffs, since there was no evidence that they suffered from any serious injury to their health, but there is ample evidence that they endured extreme discomfort from the conditions complained of, and we think that the jurors could not have been misled by the insertion of the word "health" as well as "discomfort" in the instruction. Nor do we think they could, or would, have imagined that compensation need not be reasonable. The word "compensation" itself implies an amount which is just and reasonable. Under article 6, section 22 of the Constitution, the error would not justify a reversal of the case.

There are one or two other minor matters which we do not discuss, as we think, in view of what we have

said, they are not of sufficient importance to justify prolonging an already lengthy opinion.

The judgment of the trial court is affirmed.

McALISTER, C. J., and ROSS, J., concur.