368 P.2d 637

**CITY OF SCOTTSDALE, a municipal corporation, and Fisher Contracting Co., an Arizona corporation, Petitioners,**

**v.**

**MUNICIPAL COURT OF the CITY OF TEMPE and Honorable Samuel Kee, a Magistrate of said Municipal Court, Respondent.**

**No. 7431.**

Supreme Court of Arizona,

En Banc.

Jan. 31, 1962.

Snell & Wilmer, Phoenix, for petitioners.

William G. Barnes, City Atty., Tempe, for respondent.

STRUCKMEYER, Justice.

This is an action by the City of Scottsdale and the Fisher Contracting Co., a corporation, seeking to prohibit the Municipal Court of the City of Tempe from enforcing its zoning ordinance and building code against certain property on which Scottsdale is attempting to construct a sewage disposal plant.

Scottsdale has for some years past owned and operated a sewage plant on a plot of ground near the bed of the Salt River in Maricopa County, Arizona. In 1958, it purchased twenty (20) acres for a site to expand its existing plant. Thereafter, consulting engineers designed plans for and arrangements were made to finance construction. Petitioner, the Fisher Contracting Co., was the low bidder on the proposed works.

On March 10th, 1960, the City of Tempe annexed a one-half (½) section of land which annexation embraced within its exterior boundaries both the existing plant and the twenty (20) acres acquired for expansion and thereafter zoned the area Residence I. [highest residential use] A use permit was denied by Tempe on application of Scottsdale. Nevertheless, petitioners herein, believing that the Tempe ordinance was invalid insofar as it sought to restrict the use of Scottsdale's property, commenced the construction of the proposed improvement with the result that petitioners were cited into the Municipal Court of Tempe for violating both Tempe's zoning ordinance and building code.

■ Tempe does not contend that the operation of the proposed sewage facilities will be a nuisance. While the expense may be great and vigilance is required, a sewage disposal plant can be operated so that it need not be a nuisance. City of Phoenix v. Johnson, 51 Ariz. 115, 75 P.2d 30. Nor is it suggested that Scottsdale is acting arbitrarily or capriciously in expanding its disposal plant. To the contrary, it is alleged and not denied that the Scottsdale area has had a population boom causing the existing sewage plant to become inadequate and in excess of its capacity. It also appears that the site purchased by Scottsdale for the addition to its existing plant is on land near the Salt River. We take judicial notice that such land is generally considered to be of marginal value for residential purposes and that the fall of the land and hence the

drainage is from the City of Scottsdale south to the bed of the Salt River.

It is first Tempe's position that Scottsdale has not been delegated the authority or power by the Legislature to construct a sewage disposal plant and it is argued that statutes which might seem applicable do not grant the right. We do not think the pertinent statutes can be so circumscribed.

A.R.S. § 9–522 provides:

"A. In addition to its other powers, a municipality may:

"1. * * * within or without its corporate limits, construct, improve, reconstruct, extend, operate, maintain and acquire, by gift, purchase or the exercise of the right of eminent domain, a *utility undertaking* * * *." (Emphasis supplied)

The preceding § 9–521 defines utility undertaking to include sewage disposal plant.

The title to Article III of Chapter 5, under which the quoted section is found reads: "Municipal Bonds For Financing Utilities" but we think this is of no particular significance and that it does not create a limitation on the constructing of sewage disposal plants from the proceeds of bond funds. Only when the body of an act is ambiguous will courts take into consideration the title. Garrison v. Luke, 52 Ariz. 50, 78 P.2d 1120. There is no ambiguity here. The power to acquire property by purchase or eminent domain for utility undertakings is absolutely and unconditionally prescribed by the express language used.

Scottsdale urges that it has the right by virtue of the power of eminent domain to locate its sewage disposal plant at the proposed site irrespective of Tempe's zoning. Zoning finds its authority in the police powers, Hart v. Bayless Investment & Trading Co., 86 Ariz. 379, 346 P.2d 1101, while eminent domain is the right and power in a sovereign state to appropriate private property to uses for the public good. The right is "a necessary, constant and unextinguishable attribute," of sovereignty. Constitutional provisions in regard to eminent domain do not create or grant the power, but are limitations thereon; therefore, when by Article II, Section 17 of the Constitution of Arizona it was provided that private property may not be taken without just compensation, there was an implied recognition that private property may be taken with just compensation for public use. See Cienega Cattle Co. v. Atkins, 59 Ariz. 287, 126 P.2d 481.

A.R.S. § 9–522, supra, authorizes the acquisition of property both inside and outside corporate limits without qualification. The New York Court of Appeals in a case where property owners sought an injunction to prevent the erection of a building to house garbage trucks and repair equipment contrary to zoning stated the underlying principle, "In the very nature of things, a municipality must have the power

to select the site of buildings or other structures for the performance of its governmental duties." Nehrbas v. Incorporated Village of Lloyd Harbor, 2 N.Y.2d 190, 159 N.Y.S.2d 145, 140 N.E.2d 241, 61 A.L.R.2d 965. Where the power of eminent domain exists, a political subdivision may locate its governmental functions within the territorial limits of another subdivision without regard to limitations created by zoning. State ex rel. Askew v. Kopp, 330 S.W.2d 882 (Mo.1960); State ex rel. Helsel v. Board of County Comm'rs., Ohio Com. Pl., 79 N.E.2d 698, aff'd. 83 Ohio App. 388, 78 N.E.2d 694, app. dismissed, 149 Ohio St. 583, 79 N.E.2d 911; Petition of City of Detroit, 308 Mich. 480, 14 N.W.2d 140; Aviation Services v. Board of Adjustment, 20 N.J. 275, 119 A.2d 761.

For example, the Missouri Supreme Court in State ex rel. Askew v. Kopp, supra, said:

"Local zoning ordinances are not applicable to public uses of property for which an agency of the government has the power to acquire lands by the exercise of the power of eminent domain. * * * the power of eminent domain is superior to property rights, the right to exercise the power being exclusively a legislative prerogative, 'subject only to such limitations as are fixed by the constitution itself.'" 330 S.W.2d 882, 888.

It is generally recognized that zoning restrictions do not apply to the state or any of its agencies vested with the right of eminent domain in the acquisition or use of land for public purposes. 8 McQuillin, Municipal Corporations, 43 § 25.15 (3rd ed. 1957); Annot., 61 A.L.R.2d 970 (1958).

Whether a political subdivision is subject to zoning has with some exceptions been made to depend upon the proprietary or governmental nature of the activity. Nehrbas v. Incorporated Village of Lloyd Harbor, supra; Wallerstein v. Westchester Joint Water Works, 166 Misc. 34, 1 N.Y.S. 2d 111; O'Brien v. Town of Greenburgh, 239 App.Div. 555, 268 N.Y.S. 173, aff'd., 266 N.Y. 582, 195 N.E. 210; Baltis v. Village of Westchester, 3 Ill.2d 388, 121 N.E.2d 495; Green County v. City of Monroe, 3 Wisc.2d 196, 87 N.W.2d 827; Taber v. City of Benton Harbor, 280 Mich. 522, 274 N.W. 324; Nichols Engineering & Research v. State, 59 So.2d 874 (Fla.1952); Mayor Etc. of Savannah v. Collins, 211 Ga. 191, 84 S.E.2d 454; McKinney v. City of High Point, 237 N.C. 66, 74 S.E.2d 440; and see 2 Metzenbaum, Law of Zoning, 1280 Chapter X–i, "When Zoning Ordinances Not Deemed to Affect Municipal Or Other Political Subdivision Buildings" (2nd ed. 1955).

◼ This brings us to Tempe's next contention that Scottsdale should be held subject to Tempe's zoning regulations because

**398**

the municipal activities here are proprietary and not governmental in character. Tempe urges upon this Court the decision in Jefferson County v. City of Birmingham, 256 Ala. 436, 55 So.2d 196, wherein the Alabama Supreme Court decided that the operation of a sewage disposal plant was a proprietary function. The question is not without a division of authority. See State ex rel. Askew v. Kopp, supra. However, we are persuaded to the view that the operation of a sewage disposal plant is a governmental function by what we consider to be the better reason.

Over thirty years ago this Court concluded that the collection and disposal of garbage constituted a governmental function. Jones v. City of Phoenix, 29 Ariz. 181, 239 P. 1030. At that time we approved the reasoning in Love v. City of Atlanta, 95 Ga. 129, 22 S.E. 29, 51 Am.St.Rep. 64 in holding that the preservation of the public health is one of the duties that devolves upon the state as a sovereignty; that in its discharge the state is acting strictly in the discharge of one of the functions of government; and that a municipal corporation likewise in the discharge of such a duty is in the exercise of a purely governmental function affecting the welfare not only of the citizens, residing within its corporate limits but of the citizens of the state generally, all of whom have an interest in the prevention and spread of infectious or contagious diseases. If the reasoning

advanced in the Jones case was valid as to garbage disposal thirty-five years ago, it is even more apposite in the case of sewage today where through modern devices garbage as well as human excretion and waste are disposed of into sewer lines. Rising population trends compel civilized men to live in the closest proximity. Adequate sewage disposal is not merely desirable, it is a stark necessity. Even in other areas such as the field of tort liability in which the courts have been most reluctant to expand governmental immunity, the weight of recent authority seems to favor the theory of a governmental function e. g., 63 C.J.S. Municipal Corporations § 873, p. 253.

Tempe argues without citation of authority that even if Scottsdale could have acquired the land by eminent domain free of zoning restrictions for a sewage plant, it did not, but rather acquired title by purchase, and therefore, Scottsdale's right to erect the plant in violation of the zoning ordinance was lost. The same argument was considered in State ex rel. Askew v. Kopp, supra, and found to be without merit. By it a distinction is sought to be drawn without the basis of a valid difference. Were we to decide that zoning ordinances are superior when property is purchased but not when acquired by eminent domain, nothing could prevent Scottsdale from condemning a site immediately adjacent to the present parcel and lawfully re-locating its sewage plant there. The state and its

public agencies should not be required to acquire property by eminent domain which otherwise would be purchased merely to avoid restrictive zoning.

The foregoing disposes of the principal questions. We note that the Fisher Contracting Co. is charged in the Municipal Court of Tempe with violating Tempe's building regulations in failing to obtain a construction permit. This Court repeatedly stressed in Board of Regents of Universities, Etc. v. City of Tempe, 88 Ariz. 299, 356 P.2d 399, that a state agency delegated by law with the responsibility of performing a governmental function was not subject to the police powers of the city exerted through its building code.

█ Tempe also argues that prohibition is not a proper remedy because the proceedings could and hence should be initiated in the superior court. A remedy is not plain, speedy and adequate where the issues relate to the public's health and safety and the ultimate decision may be postponed two or more years.

For the foregoing reasons the alternative writ of prohibition is made permanent.

BERNSTEIN, C. J., and UDALL, V. C. J., concur.

LOCKWOOD, Justice (dissenting).

I regret that I cannot concur with my colleagues in the majority opinion, since it appears to me that the principles laid down therein are unsound because they embrace legal conclusions of other courts, without careful analysis of the bases of such conclusions as applied to the Arizona statutes involved.

The chief question presented to this court, raised by challenging the jurisdiction of the city magistrate of Tempe to enforce that city's zoning regulations, is this: Can the city of Tempe enforce zoning regulations against the use of land owned by the city of Scottsdale, lying within the corporate borders of Tempe? The majority, basing Scottsdale's ownership of the land upon a right of eminent domain, unqualifiedly answers "no", holding that a city purchases land which it could have acquired by eminent domain, for a purpose which is "governmental" in nature, it cannot be restricted to use of the land by *any* zoning regulations, and that operation of a sewage disposal plant is a "governmental" function.

As acknowledged in the opinion, here is a direct conflict between the power of eminent domain and the police power, from which stems the zoning authority. The opinion emphasizes the sovereign nature of eminent domain, but skims lightly over the nature of the police power, which "is a general term used to express the particular right of a government which is inherent in every sovereignty."[1] This court, in American

1. 11 Am.Jur. Constitutional Law § 245 (1937); See cases cited note 6 therein.

Federation of Labor v. American S. & D. Co., 67 Ariz. 20, 26–27, 189 P.2d 912, 917, stated:

> "There is, in the strict sense, no federal police power, A. F. of L. v. Watson, D.C., 60 F.Supp. 1010, because that is one of the powers impliedly reserved to the states by the Tenth Amendment. Justice Taney in License Cases, 5 How. 504, 583, 12 L.Ed. 256, 257, defined the police powers of a state as being 'nothing more or less than the powers of government inherent in every sovereignty to the extent of its dominions.' This undefined power of government covering the health, safety, or welfare of the people bears the same relation to the state that the principle of self-defense bears to the individual."

In 1 Lewis, Eminent Domain, § 1 (3rd. Ed. 1909) eminent domain is defined as "the right or power of a sovereign state to appropriate private property to particular uses, for the purpose of promoting the general welfare." The same author, distinguishing eminent domain from the police power, states:

> "Everyone is bound so to use his own property as not to interfere with the reasonable use and enjoyment by others of their property. For a violation of this duty the law provides a civil remedy. Besides this obligation, which every property owner is under to the owners of neighboring property, he is also bound so to use and enjoy his own as not to interfere with the general welfare of the community in which he lives. It is the enforcement of this last duty which pertains to the police power of the state so far as the exercise of that power affects private property. Whatever restraints the legislature imposes upon the use and enjoyment of property within the reason and principle of this duty, the owner must submit to, and for any inconvenience or loss which he sustains thereby, he is without remedy. * * * Under the one, [the police power] the public welfare is prompted by regulating and restricting the use and enjoyment of property by the owner; under the other, [eminent domain] the public welfare is promoted by taking the property from the owner and appropriating it to some particular use." [2]

It is evident that both eminent domain and the police power are inherent attributes of the sovereign states, and necessary to their welfare. Each of these powers may be delegated by the legislature to a political subdivision. Cities derive their police powers and power of eminent domain either by specific grant, or by implication from the nature of their general governmental pow-

---

**2.** 1 Lewis, Eminent Domain § 6 (3rd Ed. 1909).

ers.[3] But a city has no implied power to exercise its governmental functions outside its corporate limits,[4] although it may be granted specific authority to own property, or engage in business enterprises outside its borders. Police powers, specific or implied, are broad in nature, and depend upon the reasonableness of their exercise in the public welfare. Eminent domain statutes must be strictly construed.[5] Unless specifically authorized to do so, a city may not condemn land beyond its borders.[6] Express power to condemn for a certain purpose is limited to that purpose.[7]

On the other hand, the police power is necessarily expansive, to meet new conditions or standards affecting the public welfare,[8] and it is by no means limited to dealing with common law nuisances.[9] To paraphrase this court's holding in the American Federation of Labor case, supra, acting through government, instead of as individuals, the police power is the people's *right* of self-defense against a condition which threatens their welfare. Eminent domain is the people's *right* to take property for a public use in the promotion of their general welfare. Hence courts universally have recognized that, governmental functions being a necessity for organized society, the use of eminent domain for the *inherent* functions of a government is the exercise of a superior right of the sovereign (in our country, the people) over the right of the individual in specific property.

That the Arizona legislature has by special statute granted a municipality the right to acquire land by eminent domain, either within or without its corporate limits, for a "utility undertaking", which includes operating a sewage disposal plant thereon, is true. That it has ipso facto constituted such operation an exclusive governmental function does not follow. A.R.S. § 9–521 defined "utility undertaking" as follows:

"4. 'Utility undertaking' means any one or combination of the following:

"(a) Electric light or power, water, * * * gas, common carrier of passengers, garbage, or rubbish plant or system, including but not limited to disposal, treatment or reduction plants, buildings, incinerators, dams and reservoirs.

"(b) Airport buildings or other airport facilities or buildings or structures

3. See Ariz.Const. Art. 13 § 2; A.R.S. Title 9 Chaps. 4–6.
4. Becker v. City of La Crosse, 99 Wis. 414, 75 N.W. 84, 40 L.R.A. 829 (1898).
5. 11 McQuillin, Municipal Corporations § 32.19 (3rd Ed. 1950).
6. Id. § 32.66; 1 Antieau, Municipal Corporation Law, § 5.09 (1955); City of Wichita v. Clapp, 125 Kan. 100, 263 P. 12, 63 A.L.R. 478 (1928).

7. 11 McQuillin, Municipal Corporations § 32.16 (3rd. Ed. 1950).
8. State v. Henry, 37 N.M. 536, 25 P.2d 204, 90 A.L.R. 805 (1933).
9. Bowman v. Virginia State Entomologist, 128 Va. 351, 105 S.E. 141, 12 A.L.R. 1121 (1920).

to provide offstreet parking of motor vehicles, together with all parts thereof and appurtenances thereto."

It cannot be maintained that each of these "undertakings" is purely governmental in nature, nor is one or more singled out as governmental or proprietary. Thus the legislature has not extended an inherent governmental power of the municipality, although it has (in consonance with the constitutional provision giving municipal corporations the right to engage in business pursuits),[10] authorized the municipality to acquire land for the purposes enumerated, which obviously are benefits to large segments of the public. Since it has not enlarged the nature of an inherent governmental function, the municipality which has the statutory right to operate a "utility enterprise" on land acquired by eminent domain under these statutes, is subject to the same limitations in its operation as would apply to private individuals or corporations in similar circumstances. Its *right to use the property* is limited by any superior right.

As indicated in the majority opinion, in similar cases where there has been a conflict of decisions, some courts have held the ownership and operation of similar utilities, having been authorized by a grant to acquire by eminent domain, to be "governmental" in nature; others have held them to be "proprietary", or in the nature of a private or business enterprise. In the first line of cases, as in the majority opinion, it has been held that zoning ordinances, stemming from the police powers, are inferior to the use of property "for a governmental" purpose, even when located within the corporate limits of the zoning authority. In the second line, the zoning authority has been held superior, on the basis that the use of the land, although authorized to and exercised by a governmental agency, is "proprietary" in nature.

The court, in the majority opinion, cites the Jones case, decided in 1925, holding that garbage disposal was a governmental function, as authority for its determination that operation of a sewage disposal plant in this case is a governmental function. The court does not, however, mention that the Jones case was an action for damages against the city for personal injuries to an individual, and involved not a question of conflict of rights of two sovereign entities, but that of immunity of the sovereign from tort liability to an individual. The basic concern stems from the *superior* right of a city, as a subdivision of the sovereign state, to preserve the general health and welfare "not only of the citizens resident within its corporation, but of the citizens of the commonwealth generally", and for such a general purpose the function is a sovereign, or

10. Ariz.Const. Art. 13 § 5.

governmental one, from which the sovereign is immune from liability to an individual. However, as is pointed out in Jefferson County v. City of Birmingham, 256 Ala. 436, 55 So.2d 196 (1951), Alabama has held a sewage disposal plant a governmental function for governmental immunity from tort liability, (the superior right of the sovereign over the individual) although it holds the operation to be *proprietary* when the conflict of rights is between two political subdivisions of government. A good analysis of the two classes of municipal functions is given in the following dissertation:

"A municipal corporation possesses two classes of functions being on the one hand a subdivision of the state endowed with governmental powers and charged with governmental duties and responsibilities, and on the other, a corporate body, capable of much of the same acts as private corporations and having the same special and local interests and relations, not shared by the state at large. * * *

"Governmental functions are those conferred or imposed on a municipality as a local agency of limited and prescribed jurisdiction, to be employed in administering the affairs of the state and in promoting the public welfare for all the people of the community. * *

"On the other hand, a municipality usually exercises proprietary functions when it promotes the comfort, convenience, safety and happiness of its own inhabitants rather than the welfare of the general public.

" * * * In the exercise of its proprietary functions, a municipality is clothed with the same measure of authority over its property that private corporations and individuals enjoy, unless restricted by its charter or by general law. * * * *A municipality may not carry on any activity which is private in the true sense since all of its functions must be for a public purpose, and all functions not governmental are held to be proprietary.*" (Emphasis supplied.) Rhyne, Municipal Law § 4–7 (1957).

Promotion of the public health and welfare of a community is a duty of the municipality; it certainly has a sovereign right to accomplish this within its borders. But the question here presented is, may it do so outside its borders, without express delegation of such power, by invading the borders of a co-ordinate sovereign, and thus supercede the latter's same right and duty to its inhabitants? This again presents the question of superior right.

From a reading of the various cases cited, particularly those which attempt to analyze the reasons for their conclusions to any extent, it will be seen that the courts are not so much concerned with a conflict

between *eminent domain* and the *police power,* as they are with which is the ascendent or *superior right* in the particular fact situation. Their concern is how the rights of the public, either under the necessity for taking of land for public use or benefit under eminent domain, or the denial of the particular use under police power, are related to the general welfare of the segments of the public in conflict. An airport located some distance from an urban population,[11] a sewage disposal plant serving the urgent needs of a city,[12] as opposed to the possible annoyance or lowering of property values in a rural section, obviously seem public uses and rights which are superior to the individual or collective rights of the lesser segment of the public seeking to restrict them. Hence they have summarily been declared "governmental", in character, to invest them with the superior right. But the establishment of a sewage disposal plant by a county within an area of a large city zoned for residential purposes,[13] presents a conflict of rights which the court resolved in favor of the zoning authority, even though the county had authority to establish such a plant, and to acquire the land by eminent domain.

In the instant case there is a conflict in the rights of two cities both of equal stature of government, with equal inherent and statutory delegated powers. In view of the fast growing populations of each, and of other cities lying within the geographical area in which they are situated, (facts of which we can certainly take judicial notice) there can be little doubt that eventually there will be similar conflicts of rights. Conceivably, under the majority opinion, a situation may develop where City A will locate a sewage disposal plant within the limits of City B, which in turn will retaliate by locating its sewage disposal plant within City A's borders, and so ad infinitum. That Scottsdale urgently needs a sewage disposal plant is undenied; that it may locate it with impunity within another city's borders without regard to a proper restriction in the interest of the general welfare of the latter establishes a principle fraught with danger and confusion.

It appears to me that when the rights of two political subdivisions of the state under delegation of sovereign powers conflict, the problem should not be resolved by judicial determination that the grant of the power of eminent domain, when exercised to secure a *public benefit,* thereby clothes the subsequent use with the cloak of governmental function, extending far beyond the body politic which exercises it, enveloping others

11. Aviation Services v. Board of Adjustment, 20 N.J. 275, 119 A.2d 761 (1956).
12. State ex rel. Askew v. Kopp, 330 S.W. 2d 882 (Mo.1960).

13. Jefferson County v. City of Birmingham, 256 Ala. 436, 55 So.2d 196 (1951).

of equal sovereign authority. Instead, the strict limitations applied to eminent domain should govern, and a conflict between the two governmental agencies should be determined as between two individuals of equal stature—by strict measurement of their inherent rights and their rights conferred by statute.

The majority opinion (in what seems to me an unwarranted use of *judicial notice*,) assumes that the land in question is "generally considered to be of marginal value for residential purposes", implying that the zoning was not reasonable; petitioner Scottsdale obliquely indicates that the annexation proceedings are subject to question by referring to the narrow, two foot strip of land joining Tempe to the land annexed. Whether Tempe reasonably or arbitrarily exercised its zoning authority, and whether the annexed area was legally acquired in order to come within Tempe's corporate limits, are questions which cannot be decided in this proceeding.

Assuming that Scottsdale and Tempe respectively acted pursuant to the specific statutory authority conferred for operation of a "utility undertaking", and for annexation and zoning purposes, the conflict should be resolved by a determination of (1) the *superior right* involved, i. e. which city is exercising a power inherent in city government, under delegated sovereign power, and (2) whether that power was properly, and not arbitrarily, exercised. The permanent writ of prohibition should not issue, based on a denial of jurisdiction in the city of Tempe to enforce its zoning ordinances only because Scottsdale has a delegated special right of eminent domain to operate a "utility undertaking" outside its borders.

JENNINGS, J., concurs.