WILLIAM WITZEL, SR., AND MARIE WITZEL, HUSBAND AND WIFE, APPELLANTS, V. THE VILLAGE OF BRAINARD, A MUNICIPAL CORPORATION, APPELLEE.

302 N.W.2d 723

Filed March 6, 1981. No. 43268.

George H. Moyer, Jr., of Moyer, Moyer & Egley for appellants.

Kent F. Jacobs of Blevens, Blevens & Jacobs for appellee.

Heard before BOSLAUGH, CLINTON, and BRODKEY, JJ., and REIMER and HIPPE, District Judges.

REIMER, District Judge.

The plaintiffs are owners of Lots 8, 9, and 10, Block 2, Original Town of the Village of Brainard in Butler County, Nebraska, upon which is located a dwelling house which they intend to remodel and occupy as a dwelling. The defendant Village acquired by purchase Lots 11 and 12, Block 2, Original Town of the Village of Brainard, Nebraska, and have duly proceeded to construct a fire station thereon.

The plaintiffs brought this action for injunction in the District Court of Butler County, Nebraska, alleging violations of the duly adopted zoning ordinances of the Village of Brainard, Nebraska. A temporary restraining order was issued by the county court of Butler County, Nebraska, on May 17, 1979, in the absence of a district judge within the county. The District Court of Butler County dissolved the restraining order and plaintiff's application for a temporary injunction was denied on July 9, 1979. On January 14, 1980, the District Court denied a permanent injunction and dismissed the plaintiffs' petition. Motion for new trial was denied and appeal to this court was perfected.

It appears from the evidence that the fire station, which at the time of hearing on the permanent injunction was nearing completion, did not comply with certain setback provisions of the zoning ordinance. Plaintiffs further complain that construction of a fire station within a business district zone is not a permitted use under the zoning ordinance.

The plaintiffs contend on this appeal that the District Court erred in failing to apply the terms of the zoning ordinance to the construction of the fire station. The decision of the District Court is affirmed.

This court has not previously dealt with this exact question, but did rule on a related question in *Seward County Board of Commissioners v. City of Seward*, 196 Neb. 266, 242 N.W.2d 849 (1976), by deciding that injunction against the city of Seward in its condemnation proceeding to acquire land for airport purposes was not warranted, even though the land was within the zoning jurisdiction of the Seward County board of commissioners and its use as an airport may not have been a permitted use under the existing zoning regulations applying to that specific land.

Other jurisdictions generally grant to municipalities exemption from zoning ordinances in varying degrees, depending upon the theory of exemption adopted in that jurisdiction. The discussion at 82 Am. Jur. 2d *Zoning and Planning* §§ 149, 150, 151, 152, and 153 (1976) indicates such exemptions may be based upon express exemption contained in the zoning ordinance, or pursuant to the construction of the zoning regulations themselves; also by the express language in a supervening statute suspending the applicability of the zoning regulation, and by reason of immunity of the sovereign from suit, or where the use of the property in question was in furtherance of a governmental, rather than a proprietary, function. In § 152 at 636-37, eminent domain is discussed: "The view has gained some ascendancy that zoning ordinances are inapplicable to governmental projects for the construction of which the agency in question has the power to condemn or appropriate lands by the power of eminent domain. The courts supporting this view have, at least tacitly, reasoned that the power of eminent domain is superior to the zoning power, and that a political subdivision with mere zoning authority should not be permitted to prevent or place limitations upon a public use of property in the furtherance of which a governmental entity has been clothed with condemnation power by the state legislature."

This court has adopted the eminent domain theory

of exemption in *Seward County Board of Commissioners v. City of Seward, supra* at 270, 242 N.W.2d at 852: "The general rule is that the propriety of a taking of property by eminent domain is not defeated by the fact that the purpose for which the property is taken is a use prohibited by the zoning regulations."

Furthermore, the Legislature has, at Neb. Rev. Stat. § 19-901 (Reissue 1977), limited the purposes of zoning by villages by the following language: "[L]egislative bodies . . . may adopt zoning regulations which regulate and restrict . . . the location and use of buildings, structures and land for trade, industry, residence or other purposes," and by inference withheld zoning authority over public buildings. In addition, the Legislature has provided for conflict between overlapping zoning authority in the grant of eminent domain authority at Neb. Rev. Stat. § 19-709 (Reissue 1977), wherein it is provided: "[T]he chairman and members of the board of trustees of any village shall have power to purchase or appropriate private property or school lands for the use of the . . . village for . . . public fire stations, training facilities for firemen . . . except that no . . . village may acquire through the exercise of the power of eminent domain or otherwise any real estate within the zoning jurisdiction of any other city of the first or second class or village for any of the works enumerated in this section if the use for which the real estate is to be acquired would be contrary to or would not be a use permitted by the existing zoning ordinances and regulations of such other city or village, but such real estate may be acquired within the zoning jurisdiction of another city of the first or second class or village for such contrary or nonpermitted use if the governing body of such other city or village shall approve such acquisition and use."

The order of the District Court denying permanent injunction and dismissing plaintiffs' petition is affirmed.

AFFIRMED.

CLINTON, J., concurs in result.

HIPPE, District Judge, dissenting.

The court is holding that a municipality is not subject to its own zoning regulations, and I dissent. If the court were committed to a line of precedent which would compel this result, that would be one thing. In Nebraska, however, the question is one of first impression.

Although the answer is open in Nebraska, the problem is not new. When governments were not significant land users, and the concept of zoning was new, exemptions from zoning regulations were uniformly granted to governments. See the discussion and cases cited in 2 Anderson, American Law of Zoning, § 12.03 (1976); 2 Metzenbaum, Law of Zoning, Ch. X-i (1955); 101 C.J.S. *Zoning* § 135 (1958); 82 Am. Jur. 2d *Zoning and Planning* §§ 149 et seq. (1976); Annot., 61 A.L.R.2d 970 (1958). The notion of governmental regulation over land use was not popular. The needs of the public were thwarted by zoning complications. One government may have need for land use in an area that another government had zoned and unreasonably refused variances. Sovereign immunity was the rule, eminent domain was perceived a superior principle, and governmental accountability was nonexistent. All of these reasons contributed to the general rule that zoning regulations do not apply to governmental operations.

The absurdity of the rule is very easy to demonstrate under modern conditions. For example, one city may condemn land in the limits of another city and place its sewage facilities there. That happened in *City of Scottsdale v. Municipal Court of Tempe*, 90 Ariz. 393, 368 P.2d 637 (1962), where the dissenting opinion argues for the rule proposed by this dissent. A municipality could put its sewage disposal facility in an area zoned by it for "residential A" uses. *Kedroff v. Town of Springfield*, 127 Vt. 624, 256 A.2d 457 (1969), is an example of

such a result. Or, it could do the same thing with the city dump. *Rose v. Commissioner of Public Health*, 361 Mass. 625, 282 N.E.2d 81 (1972), illustrates such a situation.

Recognizing these kinds of problems have compelled courts of first impression to adopt a more flexible rule. Recent cases so holding include *Porter v. Southwestern Public Service Company*, 489 S.W.2d 361 (Tex. Civ. App. 1972); *Orange County v. City of Apopka*, 299 So. 2d 652 (Fla. App. 1974); *Oronoco v. Rochester*, 293 Minn. 468, 197 N.W.2d 426 (1972); *St. Louis County v. City of Manchester*, 360 S.W.2d 638 (Mo. 1962); and *City of Fargo, Cass Cty. v. Harwood Tp.*, 256 N.W.2d 694 (N.D. 1977). This seems to be the trend and acknowledges the present-day state of affairs. Governments are now significant land users. If their operations are exempt from zoning, public anticipation for development will be dashed by the very government that encoded the rules. Urban sprawl and the concrete explosion intensifies the need for strict adherence to planning. Exempting governments makes a significant uncertainty as to how much one can count on land to be developed according to the applicable zoning plan.

These courts have articulated a "balancing-of-public-interests" test to handle problems when one public interest, such as providing a fire station, conflicts with another public interest, such as the certainty that land use planning be enforced. Each case is then analyzed to determine where the public interest lies. This makes sense, because all of the public power of municipalities has its source from state statute. The power to condemn; to establish governmental facilities such as fire stations, sewage facilities, city dumps, courthouses, etc.; and to zone are all equally important and have the same sovereign. To simply say that the power to zone must always bend if other powers come in conflict is simply *avoiding* the question, not *resolving* it. The problems in such conflict are certainly

complex and demand much more than the simplistic approach that a government with power of eminent domain may disregard anyone's zoning rules, their own included.

None of the typical problems illustrated in these types of cases are present here. The power of eminent domain was not used. Two competing governments are not involved. The Village did not exempt itself from its ordinance. The Village is clearly using its governmental, as opposed to proprietary, functions. Municipalities in Nebraska are no longer totally immune from suit. The Village of Brainard simply wants to locate its fire station next to the plaintiffs' home. Its zoning regulations prohibit it at that location. Therefore, the question is squarely presented, whether a municipality may disregard its own zoning requirements with no reason at all.

The statutory authority for village zoning mandates a comprehensive plan, including: "A land-use element which designates the proposed general distributions, general location, and extent of the uses of land for agriculture, housing, commerce, industry, recreation, education, *public buildings and lands, and other categories of public and private use of land.*" (Emphasis supplied.) Neb. Rev. Stat. § 19-903(1) (Reissue 1977).

The zoning for the land in question permits no public uses whatever. The Village has provision in the zoning regulation for securing a special permit for a governmental nonconforming use after a public hearing, but the city did not even get a regular building permit, much less apply for a special permit.

Nowhere in the Nebraska statutes is there an intimation that municipalities are exempt from their own zoning rules, nor does the ordinance of the Village of Brainard provide for that. It seems to me that the statutes assume that use by the public is one category to be designated in zoning. That being the case, it seems that zoning descriptions on uses of land must include whether it will have a public use. This one does not.

It might be argued that the zoning rules should not apply to a body that enacted them because they could change them anyway. Also, usually there is a way they could provide for exceptions. Therefore, it would be a waste of time to say the regulations apply in the first place.

The problem with this thought is that it overlooks the procedure a municipality must apply in changing its regulations. First, the public is aware of what happens because of a public hearing. Second, the pressure of politics is a factor in seeing that the right result is reached. Third, judicial review is available to guard against arbitrariness.

If the majority opinion is the law, then a municipality is not required to take those steps when it deviates from its zoning requirements. All it has to do is begin construction. Under such a scheme of justice, one could wake up to find a city dump construction starting next door in a residential area of the city. There would be no notice that the government was deviating from its own rules. There would be no public forum to air the grievance. There would not be political pressure one could bring. Worst of all, the courts would be closed to a collateral injunction under this ruling because the city is not legally required to comply with its regulations anyway. This is a colossal betrayal of legitimate public expectations. If governments cannot be trusted to follow established written rules, then who can?

The majority attempts to justify the result for two reasons. They first claim that *Seward County Board of Commissioners v. City of Seward,* 196 Neb. 266, 242 N.W.2d 849 (1976), adopts the rule that all governments possessing the power of eminent domain are exempt from zoning requirements. I would adopt the "balancing-of-public-interests" rule and hold the *Seward* case to its facts of city airport establishment power versus county zoning power.

They also intimate that Neb. Rev. Stat. § 19-901 (Reissue 1977) limits zoning power of municipalities to private uses by failing to mention public uses. Two sections later, however, the statutes insist that a comprehensive plan delineate and map the public uses of land, as well as private uses. The *Seward* case assumed that the county had power to zone regarding public uses, and I would suggest that the statutes assume likewise. This is so because the eminent domain statute, Neb. Rev. Stat. § 19-709 (Reissue 1977), provides for conflicts between certain eminent domain powers of cities of the first or second class or villages and the contrary zoning of other cities of the first or second class or villages. Thus, the Nebraska statutory scheme assumes that one city may zone according to public uses that another government may have within its limits.

Since the reasons for the result are illusory, it should be clear that more consideration must be given to formulating Nebraska law on the subject. A blanket rule proposed by the majority will come back to haunt this court, as it has others. It will permit governments possessing eminent domain powers to complicate sound planning by others. Worse yet, it permits a government to disregard its own written rules that everyone else is expected to follow. The approach urged in this dissent still permits legitimate public endeavors where their need is clearly demonstrated. It does not hamstring municipalities from providing needed services; it just makes them do so within the framework of their own regulations. It does, however, provide a forum for the aggrieved neighbor. The majority rule does not.